| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. 2018-0540 | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|
| 1. Submit to Appropriate Federal Agency:<br><br>United States Department of Health and Human Services<br>Indian Health Service, Kayenta Health Center<br>Kayenta, Arizona ("IHS") | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Charles J. Atcitty<br><br>Arizona | |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | | Widowed | See attached | See attached |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

==Charles J. Atcitty, a Navajo Nation member eligible for IHS medical services, suffered illness, injury and loss from negligent acts, omissions and medical malpractice of the IHS Kayenta Health Center & staff by, inter alia, their failure to test, diagnose, treat, care or refer for expert care his serious internal infections, spinal illness, kidney & heart conditions (and misdiagnose and apply wrong or no treatments and care), which caused, inter alia, bone loss, heart injury, loss of function in back, legs, hands, disability, pain & suffering, loss of consortium, emotional distress, loss of wages, salary and benefits as detailed in Appendix A.==

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Claimant may be contacted via representative below, see Appendix A.

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claimant suffered medical malpractice injury by the failure to timely diagnose/care/treat/refer and misdiagnosis/wrong/no treatment of his serious internal infections, spinal illness, kidney & heart conditions resulting in life threatening conditions, unnecessary surgeries, bone (vertebrae) loss, heart & kidney injury, loss of function in back, legs, hands, disability, pain & suffering, loss of consortium, emotional distress, loss of wages, salary and benefits, early retirement as detailed in Appendix A.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Charles J. Atcitty | AZ |
| Treating Physicans and staff - see attached | |
| Family Members - see attached | |

12. (See instructions on reverse). **AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| $3,500,000.00 | $3,500,000.00 | NA | $3,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). *Charles J Atcitty by Sherman K. Atc* | 13b. PHONE NUMBER OF PERSON SIGNING FORM (202) 262-7187 | 14. DATE OF SIGNATURE JULY 5, 2018 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction  
Previous Edition is not Usable  
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)  
PRESCRIBED BY DEPT. OF JUSTICE  
28 CFR 14.2

Exhibit A-1

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

NA

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

Exhibit A-1

**Appendix A**
**Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95**
**Charles J. Atcitty FTCA Claim**
**Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center**

Response to Question 6. Date and Day of Accident
  See Summary of Medical Visits to the Kayenta Health Center, below Answer to Question 10.

Response to Question 7. Time (A.M. OR P.M.)
  See Summary of Medical Visits to the Kayenta Health Center, below Answer to Question 10.

Responses to Questions 8 , 9, 10. PERSONAL INJURY/WRONGFUL DEATH – STATE BASIS OF THE CLAIM. STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

A.  ==Nature and Basis of Claim for Negligence and Medical Malpractice==

  1. I am Charles James Atcitty, an enrolled member of the Navajo Nation and I served as an employee of the Indian Health Service (IHS) for nearly 37 years. I was raised on the Navajo Reservation, and upon graduation from Window Rock High School in 1975, I accepted a congressional appointment to attend the United States Military Academy at West Point. I graduated from West Point in June 1979 and served in the U.S. Army until 1991. After being honorably discharged from the U.S. Army, I returned to the Navajo Reservation, where I resided, raising my family and working for the IHS for many years. I became an employee of the I.H.S. in December of 1990, and retired in September of 2017. At time of retirement, I was the Administrative Officer (GS 14-3) of the IHS Kayenta Service Unit, the second in command of the KSU. I served in the IHS with distinction, and was awarded the IHS Area Director's Award for Excellence and the IHS Director's Award for Excellence.

  2. As a member of the Navajo Nation, I was an authorized recipient of medical care from the Indian Health Service, U.S. Dept. of Health and Human Services. When I sought medical treatment at the IHS KSU Kayenta Health Center (KHC) in July, August and September of 2018 (as detailed below, Narrative of Medical Visits to KHC), I was entitled to receive treatment according to proper standards of medical diagnosis, testing, treatment, care and referral. I was covered by Federal employee health insurance, so there was no reason for the IHS to apply a "life or limb" policy to me. Nonetheless, my life was clearly at risk due to the IHS negligent acts and omissions and failure to provide proper medical care.

  3. When I was severely ill and suffering acute, debilitating pain, including but not limited to acute, debilitating pain in my back, side, and abdomen, in July, August, and September of 2016, I sought medical care from the KHC and my medical conditions—including but not limited to a severe and potentially fatal internal infection—were not properly diagnosed or treated. I received a misdiagnosis, failure to diagnosis, and false diagnosis, and the United States acting through the IHS KHC failed to administer the necessary and appropriate tests and medical treatment, care and referrals to treat my medical condition. The IHS medical care that was provided to me was negligent, failed to meet requisite standards for medical care and was substandard, which threatened my health and my life, caused permanent injury and loss, and as a result of the IHS negligent medical care, I was injured, as outlined below.

# Appendix A
## Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95
### Charles J. Atcitty FTCA Claim
### Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center

4. I was injured by the failure of physicians and other care providers at the KHC at to properly diagnose, test for, treat and care for a deadly spinal infection and resulting heart condition that I suffered. When I first went to the IHS suffering severe pain, I was able to walk into the clinic. I saw IHS physicians and care providers at KHC four times in July, August, and September of 2016, both in the Emergency Department and in the General Medicine unit. Each time, I complained of intense back pain. With each successive visit, my pain intensified and my condition worsened. By the final visit, I could not walk, had problems sitting, sleeping and performing daily functions and activities. My condition was not diagnosed properly; I was not given appropriate treatment or referrals; and I was not given appropriate medicine. Although a note in my KHC chart references the presence of a rare bacteria in my system, this was not investigated or treated. Instead the KHC doctors misdiagnosed my illness as possible metastatic prostate cancer. It was not until I went to Phoenix Indian Medical Center on Saturday, September 24, 2016 and was referred the same day to Banner University Medical Center that I was properly diagnosed and treated for a potentially fatal internal infection. The IHS Medical Personnel should have made this diagnosis earlier and they should have commenced appropriate treatment earlier.

5. Although the IHS found that I was afflicted by a rare bacteria on my second visit there on July 11, 2016, the IHS did not provide proper testing and diagnosis of my ailment, and treatment was not provided with the result that I was severely and permanently injured. With each successive visit to the IHS in July, August and September 2016, the treatment that I received was downgraded, the failure to diagnose my medical condition was worsening—with misdiagnosis and false diagnosis included—even as my pain and medical illness and maladies increased until finally when I was unable to walk. IHS Medical staff prescribed no medicine and recommended that I take over the counter pain reliever "Motrin."

6. When I was seen, at the Phoenix Indian Medical Center on September 24, 2016, the Medical Doctor made clear that I was suffering from a potentially fatal spinal infection and finally, upon going to Banner University Medical Center in Phoenix, the Medical staff there immediately diagnosed the severity of my condition and set a treatment plan in place to address the spinal infection that had destroyed two of my vertebrae and spread to injure my heart, which required open heart surgery to replace my aortic valve. My kidneys were also injured. In all, I was at BUMC for six weeks, where I endured three major surgeries, the heart surgery, and two intensive back surgeries to remove two vertebrae of my spine and fuse artificial discs to my spine. I was then moved to a rehabilitation center for another five weeks, and finally, when they gave up on me, I was recommended to go to hospice care at home. Apparently, they assumed I would die. For months I was bed ridden, and slowly was able to regain the ability to walk with the assistance of a walker. Today, I remain disabled, with permanent injuries.

7. The United States acting through the Indian Health Service, Department of Health and Human Services, and its Medical Personnel provided negligent medical care and failed to diagnose and properly treat my serious internal infection and other actual maladies, which resulted in the deterioration and removal of my vertebrae, resulting in severe trauma, pain, loss of bone in my spine, life-threatening spinal surgery and reconstruction and permanent damage to my spine, reduced mobility and physical incapacity and impairment. The failure to properly diagnose and treat my condition resulted in injury to my heart, causing severe

Appendix A
## Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95
### Charles J. Atcitty FTCA Claim
### Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center

trauma, pain, open-heart surgery to replace my aortic valve, and permanent damage to my heart, as this aortic valve must be replaced ever ten years, which will reduce mobility and physical incapacity and impairment. These injuries caused severe trauma, pain and suffering, physical incapacity and impairment, long-term restriction to bed rest, loss of consortium with my wife, loss of time with my children, loss of work, loss of wages, annual leave and sick leave, permanent disability, loss of ability to work, forced retirement, diminished pension, permanent diminished ability to perform daily activities, permanent disability to engage in recreational activities, among other things.

8. The United States acting through the Indian Health, Department of Health and Human Services, and its Medical Personnel provided negligent medical care and failed to diagnose and properly treat my serious internal infection and other actual maladies, which resulted in permanent damage to my heart, including damage to my heart valve, resulting in the need for life-threatening heart surgery and permanent damage to my heart. The failure to properly diagnose and treat my condition resulted in severe trauma, pain and suffering, physical incapacity and impairment, long-term restriction to bed rest, loss of consortium with my wife, loss of time with my children, loss of work, loss of wages, annual leave and sick leave, permanent disability, loss of ability to work, forced retirement, diminished pension, permanent diminished ability to perform daily activities, permanent disability to engage in recreational activities, among other things.

9. The United States acting through the Indian Health, Department of Health and Human Services, and its Medical Personnel misdiagnosed me as suffering from possible metastatic prostate cancer, which wrongly diverted medical attention and resources away from my serious internal infection and other actual maladies and resulted in permanent injury to my spine and permanent damage to my heart.

10. The United States acting through the Indian Health, Department of Health and Human Services, and its Medical Personnel provided negligent medical care and failed to diagnose and properly treat my serious internal infection and other actual maladies and failed to provide necessary and appropriate testing, diagnosis, treatment and pain management, resulting in my physical pain and suffering, debilitation and physical incapacity, physical and medical injury.

B. Summary of Medical Visits to the Kayenta Health Center; Based on Recollection of Charles J. Atcitty and on medicals records produced by KCH of these visits; see attached KHC Medical Records

1. Wednesday, July 6, 2016, 3:00 p.m.
On Wednesday, July 6, 2016 at approximately 3:00 p.m., I went to the KMC Emergency Room for treatment for severe back pain, which due to the location of the pain. James Ewing, RN took my vital statistics and conducted the nursing assessment on my condition. I was experiencing constant, non-radiating left sided lower back pain. I was having pain with chills when urinating, that I had go to urinate frequently and with urgency. I took a urinalysis test. I also informed of feeling muscle spasm like pains in the affected area of my lower back.

Appendix A
Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95
Charles J. Atcitty FTCA Claim
Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center

Dr. Jose M. Borrega Acosta arrived in the room I was waiting in, and I let him know about the intense back pain I was experiencing, as well as the other symptoms discussed above. Dr. Acosta informed me that I had to control my diabetes. I was given discharge instructions, which listed the diagnosis as "uncontrolled diabetes" with instructions to "drink more fluids, take medication for DM (diabetes)." Other than the urinalysis test, no other test or lab work was conducted on my. Furthermore, no medication was prescribed for the back pain. I left the KHC ER just before 4:00 p.m., with the back pain untreated. I followed the discharge instructions regarding fluids and DM medication, but the pain in my lower back did not abate, it only worsened day by day.

2. Monday, July 11, 2016, 10:00 a.m.

On Monday, July 11, 2016 at approximately 10:00 a.m., I returned to the KHC ER and informed that since my last visit the prior week (on July 6, 2018), my back pain had worsened and had moved to the parts of my abdomen. In addition, I explained that I was having pain in my right shoulder, and had pain when extending my arm. Eileen Russell RN took my vital statistics and conducted the nursing assessment on me. I informed I was taking Tylenol, but it wasn't working. I was took a urinalysis and a blood glucose check. I was examined by Dr. Jon A. Ossen. He ordered a catheter placement and an IV was inserted into my wrist. I also had an ultrasound and x-rays.

I was given a prescription of antibiotics for Cipro, for a 10-day treatment period for an undetermined infection. I was also prescribed pain medication for my back pain. The KHC ER Discharge instructions list the diagnosis as bilateral flank pain & hematuria. Additional instructions state "consult request for CT & Urology have been entered".

I followed through on taking the pain medications and the antibiotics. Although the discharge instruction indicated that the consults for CT and Urology were placed, I didn't receive any confirmation or appointments for these consults. I was feeling better for a few days, but the back pain never fully went away.

3. Monday, August 1, 2016, 11:00 a.m.

On Monday, August 1, 2016 at approximately 11:04 a.m., I had a follow up visit with Dr. Sandra Merino Navarro, on my diabetes and back pain. I told Dr. Navarro that my back pain has been constant with little improvement. I told her I was taking over the counter pain relievers, but they weren't helping that much. I had been out of work for the past several weeks due to my back pain, and needed a doctor's note to excuse those absences when I return back to work.

According to the medical records, Dr. Navarro conducted a physical exam and ordered a number of lab tests, including a urinalysis and blood tests. The medical records also state that I received statement excusing my absences from work, and cleared to return with no heavy lifting. The medical records state that Dr. Navarro indicated that I would be referred for an echocardiogram, but do not say anything about the entered CT and Urology consults that were pending from prior visit. The medical records do not show that Dr. Navarro advised on the back pain that I had been experiencing for the past month. She didn't

# Appendix A
## Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95
## Charles J. Atcitty FTCA Claim
## Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center

prescribe any pain medications. The discharge instructions I was given state to follow up as needed. The medical records report the following diagnosis:
- Acute low back pain (P)
- Elevated blood pressure reading without diagnosis of hypertension
- Heart murmur | Aortic, Pulmonary, Tricuspid
- Hypocalcemia
- Hypokalemia
- Hyponatremia
- Obesity
- Type 2 diabetes mellitus

4. Tuesday, September 6, 2016, 8:30 a.m.

After trying to deal with the back pain for the past month, while losing the ability to walk, I arrived at the KHC ER on Tuesday, September 6, 2016 around 8:30 a.m. informing of my continued and constant back pain that I had been experiencing for the past two months. I took urinalysis and blood glucose test. My vital statistics were taken and a nursing assessment given. I was placed in a hospital bed at the ER.

I explained the back pain as "stabbing" and radiating to my upper back. When questioned by the RN, I answered that the pain worsens with movement and that the pain interferes with my energy level and ability to go to work. I also responded that the pain is less when I'm resting or repositioning.

Dr. Noalle Wolff ordered a urinalysis, and other lab tests. I also informed Dr. Wolff that I was having problems urinating and that my leg was swelling up. I was very worried that my condition had been deteriorating. I also informed that I had been taking Aleve for back pain, with no improvement. According to the KHC medical records, Dr. Wolff rendered a diagnosis of Congestive Heart Failure. This diagnosis was a shock to me, I had not had any heart issues my entire life. Another shock was to hear that I probably have prostate cancer that has metastasized AND Unexplained hyperbilirubinemia. I was very stressed and extremely worried about my life. I left the ER in a wheelchair. Once again, I was not given any pain medications, and was told to follow up with within 5 days.

I somehow was able to drive myself to Mesa, Arizona, where my wife and grandchildren resided. At that time my wife was undergoing intensive cancer treatments, so it was important to be able to spend time with her and the rest of the family. I also wanted to let her know of my health conditions. While in Mesa, my condition continued to deteriorate. I was having difficulty sleeping, sitting, walking, eating, urinating, and had bowel movements once a week. I had hoped that keeping up with my medications and resting, as instructed by the doctors at KHC, would eventually lead to improvements. However, that did not happen.

Eventually, on Saturday, September 24, 2016, my adult sons put me in a sheet and carried me to my older son's van. They took me to Phoenix Indian Medical Center (PIMC). I was quickly diagnosed there with a spinal infection that had destroyed several of my discs. That same day PIMC arranged my transport to Banner University Medical Center (BUMC) in

# Appendix A
## Supplemental Responses to Questions 6, 7, 8, 9, 10, 11 on Standard Form 95
## Charles J. Atcitty FTCA Claim
## Against the Indian Health Service, Kayenta Service Unit, Kayenta Health Center

Phoenix, for a higher level of care. Once I arrived at BUMC, my assessments, diagnoses, and treatments occurred very quickly.

Response to Question 11. Witnesses & Addresses

- Charles J. Atcitty – ███████████, AZ ███

- Medical Professions Who Treated Charles J. Atcitty at Kayenta Health Center:
  - Jose M. Borrego Acosta, MD, Family Practice – IHS KSU KHC
  - Jon A. Ossen, DO, Doctor of Osteopathic Medicine - IHS KSU KHC
  - Sandra Merino-Navarro, MD - IHS KSU KHC
  - Noall E. Wolff, MD - IHS KSU KHC
  - James A. Ewing, RN – IHS KSU KHC
  - Eileen A. Russell, RN - IHS KSU KHC
  - Brian Miller, RN - IHS KSU KHC
  - Sherri L. Roop, RN - IHS KSU KHC
  - Casey J. Patton, IHS KSU KHC

- Medical Professionals Who Treated Charles J. Atcitty at Phoenix Indian Medical Center:
  - Maria Gonzalez, MD – PIMC
  - Wesley Smith, MD – PIMC

- Family Members of Charles J. Atcitty
  - James R. Atcitty, Son – ███████████ LA ███
  - Jonathan R. Atcitty, Son - ███████████, AZ ███
  - Danielle M. Atcitty, Daughter - ███████████, AZ ███
  - Durell John, Son-in-Law - ███████████, AZ ███
  - Josiah Atcitty, Grandson - ███████████ AZ ███
  - Renee Atcitty, Sister – ███████████, AZ ███
  - Nicole Atcitty, Sister – ███████████ NM ███

6

Exhibit A-1