IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES JAMES ATCITTY,

    Plaintiff,

    v.                                        No. 1:20-cv-515 DHU-DLM

UNITED STATES OF AMERICA,

    Defendant.

**REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT (Doc. 72)**

    The subject motion is largely based on the lack of this Court's jurisdiction to hear this suit. Because Plaintiff complains about the timing of the motion, it bears repeating—subject matter jurisdiction "can never be forfeited or waived." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). And while it could have been brought earlier,[1] it also bears noting that this case does not have a pretrial order or trial setting.

    Likewise, the Federal Tort Claims Act time requirements are a condition precedent to recovery under the FTCA and, although subject to equitable tolling, are *not* subject to waiver. And even if they were, the United States *did not* waive it. *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) ("The limitations defense was not waived because it was included in the pretrial order.).

---

[1] This case has suffered the consequence from unfortunate events in the Civil Division, which includes the assigned AUSA's loss of an immediate family member, transfer of the case to other AUSAs, and significant understaffing resulting in overburdening of the remaining AUSAs, as discussed in prior briefing. Generally, the undersigned files all dispositive motions, including those based on lack of subject matter jurisdiction, by the dispositive motion deadline, and regrets this exception here.

Plaintiff's remaining arguments against dismissal of this suit fair no better. Accordingly, the United States requests the Court to dismiss Plaintiff's complaint.

## I. UNDISPUTED MATERIAL FACTS[2]

Plaintiff failed to dispute the United States' Undisputed Material Facts. Rule 56 of the Federal Rules of Civil Procedure provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record . . . ; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Similarly, the local rules require that "each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M. LR-Civ. 56.1(b).

In his response, Plaintiff failed to provide any record evidence to controvert any of the UMFs. With respect to UMFs 1, 2, 5, 6, 7, 8, 9, 10, and 13, Plaintiff raises legal arguments, such as the evidence is "new . . . submitted after the close of discovery" or that the United States had not previously produced the employment contracts. Doc. 72 at 2-3. Plaintiff also makes conclusory statements, such as the evidence "contains erroneous information" or, in response to UMFS 11, 12, and 14-27, Plaintiff simply states that he disputes the UMFs, without further explanation or

---

[2] The United States does not object to conversion of its motion to one for summary judgment. Courts in this district have held converted similar motions to dismiss based on the independent contractor exception to motions for summary judgment, finding the issue is "intertwined with the case's merits" *Gonzagowski v. United States*, 495 F. Supp. 3d 1048, 1103 (D.N.M. 2020); *De Baca v. United States*, 403 F. Supp. 3d 098, 1129 (D.N.M. 2019).

citation to the record as required by Rule 56. The United States will address Plaintiff's legal arguments below, but the facts themselves remain undisputed.

With respect to UMF 3, Plaintiff claims the United States failed to offer evidence that the November 27, 2019, letter was mailed on that date. To the contrary, Mary Christofferson, a Senior Attorney in the General Law Division, Department of Health and Human Services, declared under penalty of perjury, that "Mr. Atcitty's administrative tort claim, including its amendment, was denied in writing *by certified mail by the Agency on November 27, 2019*." Doc. 62-1 ("Attorney Christofferson Declaration")(Emphasis added.) Pursuant to 28 U.S.C. § 2401(b) the date of mailing the denial letter is the operative starting point to determine whether a tort claim is timely.[3] Attorney Christofferson made this declaration based on personal knowledge and upon a review of the official administrative tort claim records maintained by the Department and the system of records by which the records are maintained. Doc. 62-1; *United States v. Jayyousi*, 657 F.3d 1085, 1102–03 (11th Cir. 2011) ("[T]estimony of a lay witness . . . based on first-hand knowledge or observation . . . when it was based on the witness's own examination of . . . store records") (internal brackets and quotation marks omitted) (citing *United States v. Gold*, 743 F.2d 800, 817 (11th Cir.1984); *Reliance on another's reports and records*, 33A Fed. Proc., L. Ed. § 80:177 ("[T]he fact that a witness utilized, in part, reports prepared by others in preparing his or her report does not, in and of itself, render the witness's testimony outside the contemplation of Fed. R. Evid. 701.")). Plaintiff's unsupported speculation about the date of mailing and the work schedules of federal employees in Washington, D.C. does not create a dispute of fact.

---

[3] "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months *after the date of mailing, by certified or registered mail,* of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (Emphasis added.)

3

In an attempt to contradict this undisputed material fact, Plaintiff offers an unauthenticated document (Plt. Ex. A), not found in the record, purporting to be USPS tracking information from the internet that the undersigned could not reproduce. Even if the Court were to consider the unauthenticated document, it does not contradict the UMF, since it is entirely feasible that a letter is placed in the mail on one day but not processed until the next business day. Plaintiff offers no record evidence that this final denial was not made "in writing and sent by certified mail by the Agency" on November 27, 2019, as Attorney Christofferson declared under penalty of perjury. Doc. 62-1 at 2. Thus, that fact remains undisputed.

In a further attempt to cast doubt on the Attorney Christofferson Declaration, Plaintiff also purports that her Declaration is inaccurate because Plaintiff disputes the date he presented his SF-95. The date Plaintiff submitted his SF-95 is not a material fact, and Plaintiff is wrong. The operative date of presentation of the SF-95 was July 9, 2018, which is the date when the appropriate federal agency, in this case HHS OGC Claims Office, received the claim. *See Doc. 62-2, Instructions to SF-95*.[4] Plaintiff's delivery of the SF-95 to the Executive Secretariate, Indian Health Services, does not make Attorney Christofferson's Declaration inaccurate.

With respect to UMF 6, Plaintiff argues that the contracts are only task orders, not fully executed, and do not mention the individual doctors. Plaintiff is mistaken. In his Declaration (Doc. 62-5), KHC Acting Compliance and Safety Officer Alexander Piña, explains unequivocally that the attached documents are the contracts and supporting documents for medical providers who saw Plaintiff. He identifies the Non-Personal Services Contract and Statement of Work from

---

[4] See also, IHS, The Medical Malpractice Tort Claim Review Process, https://www.ihs.gov/riskmanagement/manual/manualsection. ("A person who believes she has suffered an injury due to the negligence of an IHS/Tribal health care provider or facility must first file a tort claim with the OGC Claims Office.")

4

VISTA Staffing Solutions (Docs. 62-6 and 62-7) for VISTA employees Dr. Borrego-Acosta, Dr. Ossen and Dr. Wolff. He also attached two VISTA confirmation letters and one declaration documenting the periods that the same three doctors worked at KHC when Plaintiff was a patient there. *See* Docs. 70-2, 70-3 and 70-4. Mr. Piña likewise explained that KHC had a Non-Personal Services Contract and Performance Work Statement with AB Staffing Solutions for Dr. Merino-Navarro, who was also a contract physician at KHC during the relevant time period. *See* Docs. 70-5 and 70-6. He also attached AB Staffing confirmation letters for Dr. Merino-Navarro. *See* Docs. 70-7 and 70-8. He identified the same contract documents between KHC and Robison Medical Resource Group for contract nurses Brian Miller and Casey Patton. Docs. 77-5 and 77-6.

Plaintiff does not respond to UMF 28 regarding his lack of admissible evidence of negligence by the nurses at KHC. It remains undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 900 (9th Cir. 2021).

## ARGUMENT

**A.      Subject matter jurisdiction cannot be waived.**

"Subject-matter jurisdiction defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). "[I]t represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (internal quotation marks and quoted authority omitted). The parties cannot waive or consent to subject matter jurisdiction when, as here, it is lacking. *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). Nor can it be "expanded to account for the parties' litigation conduct." *Id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 444–45 (2004)). Both the parties and the court, *sua sponte*, can challenge subject matter jurisdiction any time prior to final judgment. *Id.* The reason is simple—"only Congress may determine a lower federal court's

subject-matter jurisdiction." *Id.*

"Sovereign immunity precludes federal court jurisdiction." *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017). The United States can be sued only if and to the extent that Congress waived sovereign immunity. *Id.* Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing that such jurisdiction exists. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Plaintiff claims that the United States waived sovereign immunity pursuant to the Federal Tort Claims Act. Am. Comp., Doc. 5 at 5 ¶ 7 ("This suit is brought against the United States of America pursuant to the Federal Tort Claims Act . . . and this court has exclusive jurisdiction over this action pursuant to" provisions of the FTCA). The Court's authority to hear this suit is defined and limited by the provisions of the Federal Tort Claims Act. *In re Franklin Sav. Corp.,* 385 F.3d 1279, 1289 (10th Cir. 2004).

Now that the United States has attacked the basis for jurisdiction, "the court does not presume the truthfulness of factual allegations in the complaint but may consider evidence to resolve disputed jurisdictional facts." *Radil*, 384 F.3d at 1224. Such evidence includes proof that the allegedly negligent medical providers were not employees of the United States. The United States' alleged failure to earlier disclose evidence that defeats this Court's subject matter jurisdiction cannot be a basis to find jurisdiction. *Soto Enterprises, Inc.*, 864 F.3d at 1093.

While the undersigned cannot create or narrow this Court's subject matter jurisdiction, it is worth noting that the United States repeatedly notified Plaintiff throughout this litigation that the four doctors and two of the nurses who treated Plaintiff were contractors, not federal employees, and that the United States did not waive sovereign immunity for damage due to the wrongful actions of its contractors. In his Amended Complaint, Plaintiff alleged Defendant employed all the doctors and nurses who treated him at KHC. Doc, 5 ¶ 4. Plaintiff asserted that

the United States is liable for the "negligent and tortious action of its employees," those employees "negligently failed to provide reasonable and appropriate medical care to treat Plaintiff's maladies" and that Plaintiff "was under the medical care and supervision of doctors and nurses who were employed at the Kayenta Health Center" on July 6, July 11, August 1, and September 6, 2016. *Id.* ¶¶ 24 and 25. In its Answer, the United State denied these allegations. Doc. 16 ¶¶ 24 and 25.

Additionally, the United States asserted in its additional defenses that "[t]he injuries or damages alleged in the Complaint were not proximately caused by a negligent act or omission of *any employee* of the United States or deemed employee of the United States, acting within the scope and course of employment." *Id.*, Third Aff. Defense (emphasis added). The United States also asserted that "[t]o the extent that Plaintiff alleges negligence or fault on the part of anyone who is not an employee of the United States acting within the scope of their office or employment, or who was an independent contractor, this Court lacks jurisdiction." *Id.*, Thirteenth Aff. Defense.

The United States raised these issues again in its Initial Disclosures. The United States definitively notified Plaintiff that Doctors Borrego-Acosta, Ossen, and Wolff were employed by VISTA Staffing Solutions, Inc., a medical contracting company, and that Dr. Merino-Navarro was employed by another company, namely AB Staffing Solutions, LLC. *See* Docs. 28 (Certificate of Service of Initial Disclosures); 38-1[5] at 1-2. The United States also identified RNs Miller and Patton as employees of Robison Medical Resource Group and RNs Ewing, Roop and Russell as federal employees. *Id*. at 2.[6]

---

[5] The United States attached a copy of its Initial Disclosures to its Response to Plaintiff's Motion for Partial Summary Judgment. Doc. 38-1. Again, in response to that motion, the United States noted that the medical providers who are the target of Plaintiff's lawsuit were not federal employees and identified their respective employers in its Initial Disclosures. *Id.*, at 1, 10.

[6] Plaintiff claims that the United States "had an affirmative duty to disclose in its initial disclosures any and all documents it may use to support its defenses," citing Fed. R. Civ. P. 26(a)(1)(E). Doc.

Again, in the Joint Status Report and Provisional Discovery Plan, the United States denied that it is liable for any acts or omissions by any health care providers who were not employed or deemed employed by KHC during the relevant period of Plaintiff's care at KHC. Doc. 31 at 4. The United States notified Plaintiff that "to the extent Plaintiff seeks to recover against the United States for torts committed by individuals who are not employees of the United States from July 2016 through September 2016, the United States may be immune from suit because the waiver of sovereign immunity under the FTCA only covers torts committed by government employees or deemed employees acting within the scope of their employment." *Id.* at 5. The United States also re-identified the same contracted-for medical providers who saw Plaintiff and their private contracting companies in its list of potential witnesses. *Id.* 14-15.

Plaintiff demonstrated that he was aware of the United States' position that it did not waive sovereign immunity in his motion for summary judgment and submitted an Affidavit acknowledging that the medical providers were independent contractors. Doc. 35-1 ¶¶ 8, 9-11 (acknowledging difficulties retaining medical staff at KHC because it is rural and remote and that there were contract physicians at KHC). And Plaintiff does not claim he was prejudiced by the timing of the motion. In any event, the actions of counsel defending the United States can neither create, expand, nor constrict the United States' waiver of sovereign immunity as that is exclusively the job of congress.

**B.      The FTCA time limits are condition precedent to recovery, not subject to waiver, and were not waived.**

The Supreme Court held that the time limits under the FTCA are "not a jurisdictional

---

72 at 4. However, waiver of sovereign immunity (or lack of) is not a defense—it is Plaintiff's burden plead and prove. *Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021) ("[T]he party suing the government bears the burden to prove a waiver of sovereign immunity."). Plaintiff had ample opportunity in discovery to obtain the subject contracts but declined to do so.

requirement. The time limits in the FTCA are just time limits, nothing more. Even though they govern litigation against the Government, a court can toll them on equitable grounds." *United States v. Wong,* 575 U.S. 402, 412 (2015). The entire opinion focused on equitable tolling of those time limits and did not consider whether those same time limits may be waived. *Id.*

Plaintiff relies on *Wong* and its holding that the time limits are subject to tolling to argue that those same FTCA time limits can be all-together waived. Plaintiff does not cite any case that holds as such, and the undersigned could find none. Rather, Plaintiff relies on *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296 (10th Cir. 2003), in which the Tenth Circuit, applying Utah law, deemed the statute of limitations defense in a whistleblower employment action waivable as an affirmative defense in various circumstances, including when it was not raised in the pretrial order. However, the Tenth Circuit also recognized in *Youren* that some statute of limitations periods may be considered a "condition precedent to suit" where it is an "element of the cause of action" and therefore not subject to waiver. *Id.* at 1303. That is precisely the situation here.

*Wong* did not abrogate the bedrock principle that compliance with 28 U.S.C. § 2401(b) is a condition precedent to recovery on a claim or suit against the United States. Only Congress has the authority to attach conditions, limitations, and exceptions to waiver of sovereign immunity and only congress can alter those conditions, limitations, and exceptions. *Kontrick*, 540 U.S. at 444–45. Section 2401(b) of the FTCA establishes two conditions precedent to filing suit: first, a tort claim against the United States "shall be forever barred" unless presented within two years after it accrues and, second, if the agency denies the claim, a claimant has six months from the denial date to sue in federal court. While these time limits are subject to equitable tolling, only Congress can waive them. *See* Grant Treaster & Martin St. Aubin, *Nicked but Not Kicked: The FTCA's Statute of Limitations and Exhaustion Requirements After United States v. Wong*, 71 DOJ J. Fed. L. &

9

Prac. 31, 35 (2023). Therefore, the time limits in § 2401(b) are best analyzed as a negative defense under Fed. R. Civ. P. 8(b) that may be raised at any point through trial, and not an affirmative defense pursuant to Fed. R. Civ. P. 8(c)(1) that must be raised in an answer to avoid waiver. *Id.* at 39, citing *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506-07 (2006). A negative defense "denies or directly contradict[s] elements of the plaintiff's claim for relief." A. Benjamin Spencer, *Affirmative Defenses in General*, 5 Fed. Prac. & Proc. § 1270 (Charles Wright & Arthur Miller Eds., 4th Ed. Apr. 2023 update.).

Two district judges from this Court have considered the impact of *Wong* in a case in which the plaintiff failed to exhaust administrative remedies pursuant to 28 U.S.C. § 2675(a), *Benally v. United States,* 2015 WL 10987109 (D.N.M.), and in *Davis v. Secretary of the Air Force,* 2017 WL 3602050 (D.N.M.) where plaintiffs exhausted their administrative remedies, but untimely filed suit. In *Benally,* U.S. District Judge Martha Vazquez, in granting the defendant's motion to dismiss for failure to exhaust, found that *Wong* does *not* change the legal landscape. The court acknowledged that the FTCA's statute of limitation is not jurisdictional, but found:

> Nothing in that decision, however, represents a significant departure from prior Supreme Court precedent. To the contrary, the Court in *Wong* explained that in *Irwin v. Dept. of Veterans Affairs,* it had already held that the "'rebuttable presumption of equitable tolling' should also apply to suits brought against the United States under a statute waiving sovereign immunity." (Citation omitted). In this way, *Wong* is merely the logical application of *Irwin* to the time bar included in the FTCA.

*Benally v. United States,* 2015 WL 10987109 *3.

In *Davis,* U.S. District Judge William Johnson agreed with Judge Vazquez that equitable tolling may be available in certain circumstances and found that the "impact of *U.S. v. Wong* does not change the legal landscape but clarifies that the purpose of § 2401(b) is to set out a filing deadline that has no effect on whether district courts have the authority to hear untimely suits."

10

*Davis,* 2017 WL 3602050 *3. Judge Johnson noted that a party "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (citing *Barnes v. U.S.,* 776 F.3d 1134 (10th Cir. 2015)). The lesson from *Wong* is that the FTCA time limitations are subject to equitable tolling. It does not hold, as Plaintiff suggests, that it is subject to waiver. Plaintiff does not claim that tolling should apply here to rescue his untimely lawsuit.

Finally, even if the time requirements of the FTCA could be waived, the United States *did not* waive them, as there is not pretrial order. *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) ("The limitations defense was not waived because it was included in the pretrial order."); *Davis v. Shawnee Mission Med. Ctr., Inc.*, No. 07-CV-2323 KHV, 2008 WL 4758591, at *8 (D. Kan. Oct. 27, 2008 ("In general, the only defenses that are irrevocably waived by answering an original complaint are those that involve 'the core issue of a party's willingness to submit a dispute to judicial resolution,' such as defenses related to personal jurisdiction, venue, process and service."), *aff'd sub nom. Davis v. Liese*, 353 F. App'x 95 (10th Cir. 2009).

**C.** **Plaintiff's SF-95 does not provide notice of all claims he is asserting in his complaint which deprives this court of subject matter jurisdiction.**

The FTCA is explicit on the requirements to initiate a tort claim. 28 U.S.C. § 2675 provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by negligent or wrongful act or omission by any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *Id.* § 2675(a). The Tenth Circuit defines satisfactory notice under § 2675 as a SF-95 or other written notification, which includes both: (1) sufficient information for the agency to investigate the claims and (2) a sum certain amount of

damages sought. *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992); *see also Bradley v. United States*, 951 F.2d 268, 271 n.3 (10th Cir. 1991).

Plaintiff's SF-95 and the lengthy appendix thereto alleges injuries from negligence by "IHS Kayenta Health Center and staff" and due to "failure of physicians and other care providers at the KHC," and then specifically describes what the contract physicians did in his four visits there. However, Plaintiff failed to articulate in both the SF-95 form and the appendix what any of the nurses at KHC did wrong. In fact, he only mentions two I.H.S.-employed nurses in his appendix narrative: that on July 6, 2016, R.N. James Ewing "took my vital statistics and conducted the nursing assessment on my condition," and on July 11, 2016, R.N. Eileen Russell performed the same screening tasks. Doc. 62-2 at 3-4. There is no suggestion that R.N.s Ewing or Russell performed these screening tasks negligently; no mention of *any other* nurses' involvement in his care; and no allegations that *any* of the nurses who saw Plaintiff did anything to have caused his injuries. Nevertheless, Plaintiff argues that his medical expert, Dr. Heidi Miller, buttresses his claim for nursing negligence during the July 11 visit (Doc. 72 at 15-16).[7] Since R.N. Ewing did not see Plaintiff on July 11, any claims arising out of his care should be dismissed. While R.N. Russell did screen Plaintiff on July 11, Dr. Miller does not state in her report what alleged errors R.N. Russell made. Plaintiff's administrative claim is void of any factual allegations that would have lead the Agency to investigate any separate claims for negligent nursing care, whether by the I.H.S.-employed nurses or the contracted nurses.

Courts have consistently held that the presentation of an administrative claim pursuant to 28 U.S.C. § 2675(a) is a jurisdictional prerequisite to the filing of a suit under the FTCA. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). Failure to comply

---

[7] It remains unclear whether Dr. Miller is qualified to render opinions on nursing care.

with the requirement therefore causes, with certain exceptions, dismissal of the tort action. *Id.* For this reason, the Agency's actions (or inactions) cannot waive or bar enforcement of the notice requirement. And because the FTCA constitutes a limited waiver of sovereign immunity, its provisions are to be strictly construed. *Id.* The language of an administrative claim must give due notice to the agency that it should investigate the possibility of particular conduct. *Id.* The notice must alert the agency of the facts and circumstances underlying a claim. *Id.* at 853. The Agency need investigate only areas of inquiry that the facts alleged in the notice fairly "encompass." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016). As the Tenth Circuit further explained, "simply because an agency is in possession of information relevant to a claim does not mean that the agency is aware of the claim itself." *Id.* at 977.

Whether a plaintiff's administrative claim is sufficient to meet the notice requirements of 28 U.S.C. § 2675(a) is a question of law. *Staggs v. United States*, 425 F.3d 881, 884 (10th Cir. 2005). Here, there is no language in the SF-95 describing anything other than alleged negligent care by physicians, as nurses do not diagnose illnesses or medical conditions, or issue orders for tests or treatment. The SF-95 here lacked information that may have guided the HHS investigation on Plaintiff's later judicial claims for negligent nursing care. As a result, the negligent nursing care claims are subject to dismissal by the Court for lack of jurisdiction. *See Aguilar*, 397 F.3d at 852.

**D.     Plaintiff misconstrues the independent contractor relationship.**

An essential element "in distinguishing an [employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814 (1976). In other words, the issue is not whether a contractor "receives federal money and must comply with federal standards and regulations, but whether its

day-to-day operations are supervised by the Federal Government." *Id.* at 815. In the Tenth Circuit, the applicable test for employment status is as set forth in *Woodruff v. Covington*, 389 F.3d 1117, 1126 (10th Cir. 2004) (citing *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989)). In *Woodruff*, the Tenth Circuit enumerated seven factors ("*Lilly* factors") that the District Court should consider in determining whether a contractor may be considered a federal employee under the FTCA. *Id.* Pursuant to this analysis set forth in the underlying motion, the Court should conclude that Doctors Borrego-Acosta, Borrego, Wolff, and Merino Navarro, and R.N.s Miller and Patton were independent contractors.

Plaintiff ignores the *Lilly* factors. Indeed, he seems to concede that under well-established Tenth Circuit caselaw, Plaintiff's medical providers were not employees of the United States. *Mascareñas v. Vill. of Angel Fire, New Mexico*, No. 23-CV-52 GBW/LF, 2023 WL 6391502, at *10 (D.N.M. Sept. 30, 2023) (Court find that defendants concede arguments to which they fail to respond). Rather, he asserts that the United States is not shielded from liability under the independent contractor exception because the treating medical providers were "de facto" employees of Kayenta Health Center and the medical services they provided were through a non-delegable duty. Doc. 72 at 18-22. Plaintiff's arguments are unconvincing.

Instead of applying Tenth Circuit law, as a district court in the Tenth Circuit must do, Plaintiff suggests that "California law[8] would impose a duty of care on a private individual in a similar situation," citing 28 U.S.C. § 2674 and *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005). Doc. 72 at 18. Plaintiff is conflating two separate FTCA requirements to the waiver of sovereign immunity where: (1) the wrongful act or omission is committed by an employee of the Government, and (2) circumstances are such that a private person would be liable under the law

---

[8] Presumably Plaintiff means Arizona law, since he was treated at KHC in Kayenta, Arizona.

of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1) (the United States is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable* to the claimant in accordance with the law of the place where the act or omission occurred.") The United States's motion is based solely on the first requirement that the injury be caused by the wrongful act or omission of an employee of the Government.

Plaintiff is correct that the "*extent of* the United States' liability under the FTCA is generally determined by reference to state law." *Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir. 2013) (quoting *Molzof v. United States*, 502 U.S. 301, 305 (1992)). But "*the extent of* the United States' liability" is not the issue presented here. Rather, the Court must first decide a preliminary question—whether the United States waived sovereign immunity for Plaintiff's claims based on the actions of independent contractors. That question is decided by reference to federal law—and specifically the FTCA and 28 U.S.C. § 2671, which defines "employee of the government:"

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States but *does not include any contractor with the United States*.
>
> "Employee of the government" includes (1) officers or employees of any federal agency . . .

28 U.S.C. § 2671 (emphasis added); *United States v. Orleans*, 425 U.S. 807, 813–14 (1976) ("The Act defines Government employees to include officers and employees of 'any federal agency' but excludes 'any contractor with the United States.' 28 U.S.C. § 2671.") (Internal brackets omitted). "Since the United States can be sued only to the extent that it has waived its immunity, due regard

must be given to the exceptions, including the independent contractor exception, to such waiver." *Id*.

The United States demonstrated in its Motion to Dismiss that Doctors Borrego-Acosta, Ossen, Wolff, and Merino-Navarro, and Nurses Miller and Patton were independent contractors. Doc. 62. Plaintiff failed to dispute the undisputed material facts regarding their status as contractors or otherwise show that the United States exercised day-to-day control and supervision of Doctors Borrego-Acosta, Ossen, Wolff, and Merino-Navarro, or of Nurses Miller and Patton, all of whom were employed by three different medical contracting companies. Thus, the United States is not liable for damages that may have resulted from these providers' acts or omissions.

Plaintiff's reliance on his own affidavit, based on his prior employment at KHC (Doc. 35-1) does not change this result. First, Plaintiff does not claim to have personal knowledge of KHC's relationship with the medical providers who rendered care to him. His knowledge of other providers is not relevant and therefore inadmissible. Fed. R. Evid. 401, 402. For example, Plaintiff states that he "recalls" that "contract physicians were covered by the FTCA." Plaintiff may be recalling KHC's relationship with physicians with different contracts than the contracts presented here. For example, IHS will occasionally use a personal services contract, which does extend FTCA coverage to employees of personal services contractors. *Louis v. United States*, No. 96-CV-1161 BB/DJS, 1999 WL 35809779, at *4 (D.N.M. Mar. 19, 1999). Moreover, Plaintiff states the basis of his testimony is his "training as Level II COR" and familiarity "with the contracts needed to operate KHC." Doc. 35-1 ¶ 8. But Plaintiff does not claim that he personally oversaw the contractors, personally observed others supervising the contractors, that he otherwise observed the contractors' day-to-day work or training. Doc. 35-1. Because Plaintiff lacks personal knowledge of the subject of his testimony, his testimony is inadmissible. Fed. R. Evid. 602. Finally, Plaintiff

also asserts inadmissible legal conclusions. *See e.g.*, Doc. 35-1 ¶ 11 (Contractors "acted in the capacity of employees."). *See also Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) ("A witness cannot be allowed to give an opinion on a question of law.") Plaintiff's declaration should be disregarded.

Moreover, Plaintiff's affidavit completely ignores the contractual terms establishing that the subject contracts were non-personal services contracts, and the providers were independent contractors. Docs. 62-5 ¶¶ 3, 9, 14; 62-7 at 2; 70-5; 70-6. Rather, Plaintiff asserts that contract medical providers at KHC worked under the oversight of a Medical Director but says nothing regarding the day-to-day supervision of the same providers.

Plaintiff's secondary argument that the United States has a non-delegable duty to provide quality medical care at I.H.S. facilities like KHC also fails. Plaintiff did not allege facts that support such a claim in either his SF-95 tort claim or his Amended Complaint. Plaintiff does not identify any employee of the government who violated such duty, let alone the wrongful act or omission that would constitute breach of a "non-delegable" duty. As a result, any such claim has not been exhausted which deprives the court of subject matter jurisdiction. *Aguilar*, 397 F.3d at 852.

Plaintiff relies on *Edison v. United States,* 822 F.3d 510 (9th Cir. 2016) for his new theory of liability, but *Edison*, which is essentially a premises liability case, is distinguishable. In *Edison,* federal prisoners sued the United States under the FTCA alleging the government breached its duty to protect them from harm after they contracted a fungal illness while incarcerated at a federally-owned prison that was operated by private contractors. The District Court granted the government's motion to dismiss pursuant to the independent contractor exception to the FTCA. *Edison,* 2013 WL 4828579 *6. The Ninth Circuit reversed, holding that the exception did not bar the district court from exercising jurisdiction over Plaintiffs' three claims alleging the government

failed to adequately warn of the dangers created by inhalation of the airborne fungus; failed to provide a safe and habitable prison; and failed to develop and implement an adequate response to the epidemic caused by the fungus. *Edison,* 822 F.3d at 520-23.

In reaching this decision, the Court applied a three-part test. First, the court must decide whether state law would impose a duty of care on a private party in a similar situation. *Id.* at 519, citing *Autery,* 424 F.3d at 956. Second, if state law imposes such a duty, the court must look to the contract to determine whether the government retained some portion of that duty for which it could be held directly liable. *Id.,* citing *Autery,* 424 F.3d at 957-59 (examining the contract language and the parties' course of dealing to determine whether the duty was delegated). Third, even if it appears that the government delegated all its duties to the independent contractor, the court must ask whether state law imposed any non-delegable duties on the government. *Id.,* citing *Yanez v. United States,* 63 F.3d 870, 874-75 (holding that the United States had nondelegable duty under California law to maintain safety at munitions plant where an explosion injured contractors).

*Edison* is distinguishable on several grounds. First, Plaintiff here does not allege that his damages were caused by a condition of the premises of KHC. Rather, Plaintiff's damages were caused by the purported negligent medical care provided by independent contractors. Second, applying the *Edison* three-part analysis here, the United States hired independent contractors to provide Plaintiff's medical care. Plaintiff does not claim that the subject contracts retained any duties that give rise to liability here.

Finally, Plaintiff's claim that that the Government has a "non-delegable duty to provide safe and quality medical care at IHS," is both unsupported by the law and, even if so, would not give rise to liability under the FTCA. Plaintiff does not cite legal authority for his claim that IHS has a "non-delegable duty to provide safe and quality medical care." Instead, he cites the IHS website.

Nor does the FTCA waive sovereign immunity for any purported non-delegable duty. It waives immunity for damages "caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment, under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *United States v. Gaubert,* 499 U.S. 315, 318 n.4 (1991). The United States did not waive sovereign immunity for violation of federal law unless the same action gives rise to liability under state law. *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) ("Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons.")

Finally, the court should conclude that Plaintiff failed to identify any non-delegable duties under state law that are imposed upon the government. Even if those allegations were made, pursuant to 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA, the decision to engage independent contractors to render services to the United States and the selection of them is precisely the type of decision designed to shield the government from liability because it involves the exercise of judgment based on policy considerations. *Williams v. United States,* 50 F.3d 299, 310 (4th Cir. 1995); *Layton v. United States,* 984 F.2d 1496, 1501-02 (8th Cir.), *cert. denied,* 510 U.S. 877 (1993); *Domme v. United States,* 61 F.3d 787, 792-93 (10th Cir. 1995); *See Gonzagowski v. United States,* 495 F. Supp. 3d 1048, 1134 (D.N.M. 2020)("The United States' decision to hire the Diamond Group involves policy issues like 'budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition.' (Citation omitted). Accordingly, the discretionary function exception protects the United States' decision to hire the Diamond Group."). Furthermore, the Tenth Circuit has held

that legal doctrines, such as a non-delegable duty to protect uranium miners, have no effect upon the outcome of discretionary function issues since the exception bars suit from both negligence and health and safety duties. *Barnson v. United States,* 816 F.2d 549, 554 (10th Cir.) *cert. denied,* 484 U.S. 896 (1987). The same reasoning applies here. Thus, the court should decide that the independent contractor exception to the FTCA forecloses any direct liability on the part of the United States and grant the present motion.

WHEREFORE based upon the foregoing points and authorities, as well as those in the underlying motion, the United States respectfully requests that the Court grant the pending motion to dismiss, or in the alternative for partial summary judgment.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Roberto D. Ortega 2/2/24*
ROBERTO D. ORTEGA
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
Roberto.ortega@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I filed the foregoing pleading electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

*/s/ Roberto D. Ortega 2/2/24*
ROBERTO D. ORTEGA
Assistant United States Attorney