IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CHARLES JAMES ATCITTY**

        **Plaintiff,**

v.                              **No. 1:20-cv-00515-DHU/DLM**

**THE UNITED STATES OF AMERICA,**

        **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

        THIS MATTER is before the Court on Defendant United States of America's ("Defendant" or "United States") Motion to Dismiss for Lack of Jurisdiction or in the Alternative Motion for Summary Judgment, filed September 08, 2023 ("Motion"). [Doc. 62].  The Motion was filed almost three and a half years after Plaintiff Charles James Atcitty ("Plaintiff") filed his original Complaint against Defendant alleging that the doctors and nurses at Kayenta Health Center ("KHC"), a facility operated by the United States Indian Health Services ("HIS"), provided him negligent medical care.  [Doc. 1]. Having considered the parties' briefs, the record of the case, and applicable law, the Court finds that, for the reasons stated below, the Motion will be **DENIED**.

**I.**
**BACKGROUND**

        Plaintiff Charles James Attcity brought this case against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq.  [Doc. 1].  In his Amended Complaint, Plaintiff states that he is an enrolled member of the Navajo Nation and currently lives in Shiprock, New Mexico. [Doc. 5 at ¶ 1].  Plaintiff alleges that several physicians and nurses at the KHC committed medical negligence when they failed to properly treat and diagnosis Plaintiff. [*Id., passim*]. Plaintiff alleges that he presented to the KHC on July 6, July 11, August 1, and September 6, 2016, with a deadly infection but that the doctors Jose Borrego-Acosta, Jon Ossen,

Noall Wolff and Sandra-Merino-Navarro, and nurses James Ewing, Eileen Russel, Brian Miller, Sherri Roop, and Casey Patton, "negligently failed to diagnose, misdiagnosed, failed to treat, and mistreated [him]." [*Id.* at ¶¶ 4, 5, 10, 11, 13, 14].  Plaintiff alleges that the failure to diagnose and treat his condition caused him life-threatening infection, spinal damage, heart damage, other organ damage, pain and suffering, multiple unnecessary surgeries, loss of function, disability, permanent physical damage, loss of consortium, and economic damage.  [*Id.*  at ¶ 4].

### A.  Administrative Proceedings

On July 09, 2018, Plaintiff presented an administrative tort claim ("SF-95") to the Department of Health and Human Services ("DHHS") alleging that medical providers at the KHC hospital failed to diagnose and treat his serious medical condition. [Undisputed Material Fact ("UMF") 1].

On January 15, 2019, Plaintiff submitted an amended SF-95 in which he alleged that medical providers at KHC were negligent in failing to diagnose his internal infections, spinal illness, and kidney and heart conditions, resulting in injuries and damages. He increased the amount of his claim to $8,427,400.00.  [UMF 2].

In late November 2019, the DHHS sent a letter by certified mail to Plaintiff's counsel denying Plaintiff's administrative claim.[1]  On May 29, 2020, Plaintiff  submitted a request for reconsideration.  [ UMF 2].

---

[1] The date that the DHHS denial letter was actually mailed is contested by the parties, as discussed *infra*, Section III.C.  The United States claims that the denial letter was sent on the day it was dated, November 27, 2019.  Plaintiff believes the evidence, including United States Postal Service tracking records, indicate the letter was not sent for one to two days after November 27, 2019. Defendant United States also claims the letter set forth the time limits for when Plaintiff could request reconsideration of the denial or file suit in federal court. [Doc. 62 at 5].  However, the copy of the denial letter provided by the United States is heavily redacted and the only legible language pertaining to reconsideration states, "In the event your client requests reconsideration, the Agency will review the claim within six (6) months from the date the request is received.  If the

## B.  Federal Lawsuit

On May 28, 2020, Plaintiff filed suit in this Court.  [Doc. 1].  On July 1, 2020, Plaintiff filed his Amended Complaint, in which he alleged that Doctors Jose Borrega Acosta, Jon A. Ossen, Sandra Merino-Navarro, and Noall E. Wolf, and Nurses  James A. Ewing, Eileen A. Russell, Brian Miller, Sherri Roo, and Casey Patton, were negligent in providing medical care to him while was at the KHC. [Doc. 5, *passim*; UMF 5].

On May 24, 2021, the parties submitted a Joint Status Report and Provisional Discovery Plan, which was adopted by the Court on July 26, 2021. [Docs. 27, 33].

Also on July 26, 2021, the Court entered a Scheduling Order which included a November 22, 2021 deadline for discovery to be conducted and a December 22, 2021 deadline for the filing of all pretrial motions.  [Doc. 34].

On December 22, 2021, in accordance with the Scheduling Order's deadline, Plaintiff filed a motion for partial summary judgment asking this Court to find the United States was liable for "Plaintiff's medical maladies, injuries, and losses, which were proximately caused by the Defendants' breach of duty to provide professional medical care according to the prevailing standards." [Doc. 35 at 26]. On January 14, 2022, in response to the motion, Defendant United States argued that Plaintiff's motion had to be denied because Plaintiff's medical expert failed to show negligence by any employee or deemed employee of the United States. [Doc. 38]. On May 24, 2023, this Court issued an order denying Plaintiff's motion for summary judgement finding,

> [T]hat there is a genuine issue of material fact regarding whether the physicians identified by Plaintiff in his Complaint are federal employees covered by the FTCA or independent contractors who are

reconsidered claim is denied, your client may file suit within six months from the date of mailing of the final determination." [*Id*.].  The denial letter provided by Defendant says nothing in its unredacted portions about how long Plaintiff had to file a federal lawsuit if he did not move for reconsideration.  [*Id*.].

not covered by the FTCA and for which sovereign immunity has not been waived. *See, e.g., Sisto v. United States*, 8 F.4th 820 (9th Cir. 2021). Plaintiff's assertion that it was his recollection and observations while working as a COR with the Indian Health Services that contract physicians were treated as IHS employees covered by the FTCA is insufficient for the Court to determine, as a matter of law, that the physicians who treated Plaintiff were or are federal employees for the purpose of the FTCA.

[Doc. 54 at 2, 5/24/23 Order].

### C.  The Current Motion by the United States

On September 08, 2023, Defendant United States filed the instant Motion to Dismiss for Lack of Jurisdiction or in the Alternative Motion for Summary Judgement. [Doc. 62].  In its Motion, Defendant initially argued that Plaintiff's case must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction over Plaintiff's claims.  Defendant argued that, alternatively, the Court should grant summary judgment in its favor under Federal Rule of Civil Procedure 56 because, given the undisputed facts, it is entitled to judgment as a matter of law.

In response, Plaintiff opposes Defendant's request for relief and asserts that the Court should convert Defendant's Rule 12(b)(1) motion into a Rule 56 motion for summary judgment because the resolution of the jurisdictional questions raised by Defendants are intertwined with the merits of the case.  [Doc. 72 at 4].  In its reply, Defendant agrees that the jurisdictional questions on which it bases its Rule 12(b)(1) motion "may be intertwined with the merits of the case, so the Court may decide to consider [the motion] under the summary judgment standard."  [Doc. 62 at 6].

Given the position of the parties, and the Court's determination that the jurisdictional questions raised by Defendant are indeed intertwined with the merits of this case, the Court will

consider Defendant's motion and arguments under a Rule 56 summary judgment standard.  *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

## II.
## APPLICABLE LEGAL STANDARDS AND LAW

### A.  Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (The moving party has the initial burden of demonstrating "the absence of a genuine issue of material fact").  A fact will be determined to be material "if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology Consultants, Ltd. V. Presbyterian Healthcare Servs.,* 994 F.3d 1166, 1171 (10th Cir. 2021). If the movant can make a showing that there is no genuine dispute of material fact, "the non-moving party must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (internal quotations omitted).  At the summary judgment stage, it is the Court's duty to determine if there is a genuine issue for trial.  *See Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861 (2014).

### B.  The Federal Tort Claims Act

It is a basic tenet of American law that the federal government is immune from suit unless Congress expressly waives that immunity.  *See*, *e.g.*, *Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress").  The Federal Tort Claims Act constitutes "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party

for certain torts of federal employees acting within the scope of their employment." *Lopez v. United States*, 823 F.3d 970, 975–76 (10th Cir. 2016) (quoting *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)).  Because the FTCA constitutes a congressional waiver of the federal government's sovereign immunity, Congress has imposed certain conditions on actions brought under that enactment.  For instance, a prospective plaintiff must provide notice to the United States before pursuing an FTCA action in court. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005).  An FTCA action cannot be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a).  This notice requirement is "jurisdictional and cannot be waived." *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir.1991) (citation omitted).

The FTCA also provides that, once an administrative claim is denied, a prospective plaintiff has six months "after the date of mailing, by certified or registered mail, of notice of final denial of the claim," to file a federal lawsuit.  28 U.S.C. § 2401(b).  This time-bar is non-jurisdictional and therefore subject to equitable principles, such as tolling.  *See United States v. Wong*, 575 U.S. 401, 420 (2015); *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293 (10th Cir. 2017).

### III.
### DISCUSSION

Defendant United States brings this Motion asserting four primary arguments for dismissal as a matter of law.  First, Defendant argues that this Court must dismiss Plaintiff's Complaint because it lacks subject matter jurisdiction over the matter.  This is so, explains Defendant, because Plaintiff's claims are based on the alleged negligence of doctors and medical providers who are not employees of the federal government and cannot be deemed as such for purposes of the FTCA. Second, Defendant asserts that dismissal of the claims related to the nurses at the KHC facility

who allegedly provided care to Plaintiff is appropriate because this Court lacks subject matter jurisdiction over those claims. Defendant grounds its argument on its belief that Plaintiff failed to exhaust his administrative remedies as to his negligence claims against these nurses.  Third, Defendant argues that it is entitled to summary judgment because Plaintiff failed to file his Complaint in this Court within six months after the denial of his claim.  And finally, Defendant claims that he is entitled to summary judgment as to the negligence claims against the nurses who provided medical care to Plaintiff because Plaintiff has no evidence of a breach of the standard of care or causation.

> **A. Defendant Is Not Entitled, at This Stage of the Litigation, to Summary Judgment on Plaintiff's Claims Against It Based on the Alleged Conduct of Certain Physicians and Nurses.**

> 1. The Parties' Positions

Defendant first argues that Plaintiff's claims against it based on the alleged acts of the four physicians and two of the nurses[2] named in Plaintiff's Amended Complaint fail because the undisputed facts demonstrate that these medical personnel were employees of independent contractors, not federal employees.  [Doc. 62 at 13].  According to the United States, this is evident in the contracts between certain staffing companies and KHC, as well as other supporting documents such as statements of work and confirmation letters.  [*See id*.] Indeed, of the 28 "undisputed material facts" asserted by Defendant, 22 of them reference or relate to information provided by these documents.  [*See id*. at 2-6 ] ("UMF Nos. 6 through 27).

Relying on the Supreme Court's decision in *Logue v. United States*, 412 U.S. 521, Defendant contends that employees of contractors are not covered by the waiver of sovereign

---

[2] Defendant claims that nurses Miller and Patton were employees of contract medical providers and not federal employees.  [Doc. 62 at 13].  The Court assumes that Defendant is conceding the remaining nurses – Ewing, Russell and Roop, were or are federal employees.

immunity under the FTCA if their physical performance is not subject to government supervision. [Doc. 62 at 9-10]. Defendant identifies seven factors articulated by the Tenth Circuit in *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir. 1989) (the "*Lilly* factors"), for determining whether a contractor could be considered a federal employee under the FTCA, and argues that the contracts and statements of work it provided with its Motion show that the *Lilly* factors weigh in favor of finding that the medical personnel at issue here were not federal employees. Thus, argues Defendant, this Court lacks subject matter jurisdiction over the claims related to their alleged actions because the United States has not waived sovereign immunity as to non-federal employees under the FTCA.

In response, Plaintiff argues that Defendant's Motion on this issue should be denied because Defendant failed to timely disclose the documents that form the basis of its argument. [Doc. 72 at 3]. Plaintiff contended at the hearing on the Motion that the contracts/agency task orders, statements of work, and other documents now relied upon by Defendant were not provided, disclosed, or produced to Plaintiff as part of Defendant's initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) & (2) – which were due on December 11, 2020, or during the discovery period in this case, which ended in accordance with the Court's Scheduling Order on November 22, 2021. [*Id.*]. According to Plaintiff, and not disputed by Defendant, the documents relied on by Defendant were not provided to Plaintiff until the instant Motion was filed on September 8, 2023 – almost three years after initial disclosures were due and almost two years after the discovery period ended in this case. Plaintiff contends that the denial of Defendant's motion is appropriate given its untimely disclosure of these documents.

In its defense on this issue, Defendant says very little about the untimely disclosure and production of the documents it now relies on for summary judgment, other than to assert at the hearing on the matter that it consented to extensions of time for Plaintiff to respond to its Motion.

2. <u>Analysis</u>

The issue whether the doctors and nurses alleged to have engaged in negligence are federal employees or could be deemed federal employees is critical to this case because, as Defendant points out, the United States can only be sued if and to the extent that Congress waived sovereign immunity pursuant to the Federal Tort Claims Act.  *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); *Aviles v. Lutz*, 887 F.2d 1046, 1048 (10th Cir. 1989) (stating that where Congress has not authorized suit under the FTCA, the district courts are without subject matter jurisdiction).   The problem with Defendant's request, however, is that it is asking the Court to find, as a matter of law, that most of the allegedly negligent medical professionals in this case are not federal employees and cannot be deemed as such, based almost entirely on documents that it inexplicably did not produce to Plaintiff for *years* during the pendency of this litigation.  The documents, which, as stated above, include contracts or agency task orders, statements of work, and other documents outlining the relationship between KHC and the staffing companies identified therein, were certainly in existence at the time this litigation was commenced (over 4 years ago) and there is simply no justification for the United States' failure to obtain and produce these documents before the end of discovery.   Because Plaintiff did not have the opportunity to fully review or, in his discretion, conduct discovery related to these documents and what they purport to show, he has been significantly prejudiced by the fact that he cannot fully and adequately respond to Defendant's argument on this issue.

9

In his response to Defendant's Motion and at the hearing conducted by the Court, Plaintiff requested that, given the untimely production of these documents, he be allowed to conduct discovery on the issues raised in Defendant's Motion concerning the status of these physicians and nurses. Plaintiff has not submitted an affidavit or declaration to explain why he "cannot present facts essential to justify its opposition" to the Motion, *see* Fed. R. Civ. P. 56(d), but the Court finds that it is not necessary to do so given that the parties seem to agree that these documents were not provided to Plaintiff until almost two years after the discovery deadline in this case had passed. The Court notes that, if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "give [the nonmovant] an opportunity to properly [ ] address the fact[s]," which is the only fair and just manner to proceed under these facts. Fed. R. Civ. P. 56(e).

The Court will thus deny Defendant's motion on this issue at this time, without prejudice, because it is based on documents not provided to Plaintiff during this litigation until after the discovery period terminated. The Court will allow Plaintiff to conduct discovery on the issue whether the medical professionals identified in this litigation are or could be deemed federal employees for the purpose of the FTCA's waiver of immunity, as described more fully in the Conclusion below. The Court will then allow Defendant to refile its Motion, limited to 10 pages, focusing only on the issue regarding the employment status/relationship of the named physicians and nurses. Plaintiff may then submit a response, also limited to 10 pages, to address the same issue.

**B. Plaintiff Sufficiently Exhausted His Administrative Remedies Against the KHC Nurses.**

1. The Parties' Positions

Defendant next argues that this Court lacks subject matter jurisdiction over Plaintiff's claims against the registered nurses who provided him medical care at the KHC because Plaintiff failed to exhaust his administrative remedies against them.  Defendant explains that, in his SF-95, the administrative form required to be submitted to initiate an administrative claim, Plaintiff only identified two nurses and states that on July 6, 2016, nurse James Ewing "took [Plaintiff's] vitals and conducted a nursing assessment," and on July 11, 2016, nurse Eileen Russell also took his vitals and conducted a nursing assessment.  [Doc. 62 at 22].  However, according to Defendant, Plaintiff does not suggest or imply in his SF-95 that these two nurses harmed him in any way.  As to the other three nurses who treated Plaintiff, Defendant contends that Plaintiff never mentioned them by name in his SF-95, except to identify them as witnesses, nor did he describe their involvement in his care or what they may have done to harm him.  [*Id.*].

Plaintiff argues that he has properly exhausted his claims against both the doctors and nurses who treated him at the KHS. While Plaintiff concedes that notice must be strictly construed when considered under the FTCA's waiver of sovereign immunity, *see, e.g., Bradley,* 951 F.2d at 270, Plaintiff argues that he has met this burden and cites several places in the appendices to his SF 95 form where he provided notice of his claims against the nurses at KHC who provided him medical care.  Specifically, Plaintiff cites to the following language where he alleged he:

> [W]as injured by the failure of physicians **and other care providers at the KHC** [sic] to properly diagnose, test for, treat and care for a deadly spinal infection and resulting heart condition that [he] suffered.

> [S]uffered illness, injury and loss from negligent acts, omissions and medical malpractice of the **IHS Kayenta Health Center & staff** by, inter alia, their failure to test, diagnose, treat, care or refer for expert care his serious internal infections, spinal illness, kidney &

heart conditions (and misdiagnose and apply wrong or no treatments and care), which caused, inter alia, bone loss, heart injury, loss of function in back, legs, hands, disability, pain & suffering, loss of consortium, emotional distress, loss of wages, salary and benefits as detailed in Appendix A.

[Doc. 62-2 at 4] (emphasis added).

And the statement in the appendix to his SF-95 where he alleged:

The United States acting through the Indian Health Service, Department of Health and Human Services, **and its Medical Personnel** provided negligent medical care and failed to diagnose and properly treat my serious internal infection and other actual maladies, which resulted in the deterioration and removal of my vertebrae, resulting in severe trauma, pain, loss of bone in my spine, life-threatening spinal surgery and reconstruction and permanent damage to my spine, reduced mobility and physical incapacity and impairment.

[*Id.*] (emphasis added).

These statements, Plaintiff argues, provided the government sufficient notice that non-physician medical care providers, *i.e.*, the nurses who assisted in his medical care and treatment at the KHS, were a part of his administrative complaint.  Plaintiff believes that he has met the standard set forth by the Tenth Circuit's FTCA notice requirements.

2.  Analysis

As stated previously, the FTCA requires "that claims for damages against the government [first] be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Estate of Trentadue*, 397 F.3d at 852.  The purpose of this requirement is "to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation." *Lopez*, 823 F.3d at 977 (10th Cir. 2016).  Importantly, the Tenth Circuit has cautioned that the notice requirement "should not be interpreted inflexibly." *Estate of Trentadue*, 397 F.3d at 852.  "No statement of legal theories is required ... only facts plus a demand for money." *Lopez*, 823 F.3d at 977.  "Several courts [within the Tenth Circuit] have ... interpreted the provision to

require notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." *Id.* (citing, e.g., *Barnson v. United States*, 531 F. Supp. 614, 623 (D.Utah 1982) ("[A] claim is sufficient which notifies the agency of the facts of the incident and need not elaborate all possible causes of action or theories of liability.")). An FTCA notice should be read to "encompass[ ] any cause of action fairly implicit in the facts." *Lopez*, 823 F.3d at 976.

Applying these principles here, the Court finds that the cause of action based on the medical care provided to Plaintiff by the nurses (and physicians) at the KHC is "fairly implicit in the facts" outlined by Plaintiff in his July 5, 2018, SF-95 form and its appendix, and his amended SF-95 form.[3]  [Doc. 62-2; Doc. 62-3].  On his SF-95 forms, Plaintiff provided both the substance of his claim and a demand for money, as required by the FTCA and Tenth Circuit law.  More specifically, Plaintiff informed the United States that he suffered injury by the failure of what he referred to as the "Medical Personnel" at the KHC or "other care providers" in addition to the physicians at the KHC, to timely and properly diagnose, care, and treat him during the time that he presented to the KHC in July, August, and September of 2016.  [Doc. 62-2 at 1-8].  Defendant nevertheless contends Plaintiff did not sufficiently describe his injury to enable it to investigate any claims arising of the conduct of the nurses who cared for and assisted in treating him at the KHC.  [Doc. 62 at 23].  According to Defendant, Plaintiff "does not include any facts in his administrative claim

---

[3] The Court notes that, while arguing that Plaintiff did not provide sufficient information in his SF-95 forms to meet the notice requirements of the FTCA, Defendant did not submit to the Court complete copies of these submissions.  Instead, Defendant provided only heavily redacted copies of these forms.  In both SF-95 forms, for instance, the entirety of the sections requesting the "Basis of [Plaintiff's] Claim" is redacted. [Doc. 62-2 at 1; Doc. 62-3 at 1].  Similarly, throughout the extensive narrative provided by Plaintiff in his appendix to his SF-95 form, there are several redactions to the information provided by Plaintiff concerning his alleged claims.  [Doc. 62-1 at 5-8].  Nevertheless, as discussed above, the unredacted portions of the SF-95 and its appendix provide sufficient information to meet the FTCA's notice requirement.

to explain how they may have harmed him or what the agency should have investigated regarding their involvement in his care."  [*Id*.]

The Court disagrees that Plaintiff did not sufficiently describe his injury resulting from the alleged negligence in his medical care.  Plaintiff provided more than six full pages detailing the extensive injury he suffered because of the alleged misdiagnosis, negligent care, and treatment provided to him by KHC medical personnel.  [*See id*.]. Defendant seems to fault Plaintiff for not specifically referring to "nurses" when describing the facts which he contends led to his injuries, but the Court notes that Plaintiff refers to the negligence of "Medical Personnel," and "other care providers," which should have alerted the United States that the claims of negligence extended beyond the acts of the physicians at the KHC.[4] In addition, with his amended SF-95, Plaintiff provided the United States with medical expert reports, including that of Dr. Heidi Miller, who opined that Plaintiff's medical charts lacked essential documentation and included erroneous medical information concerning Plaintiff – actions fairly attributable to the nursing staff at the KHC.  [Doc. 35-3 at 14].  To say that Plaintiff's claims of negligence should be barred because he did not specifically name nurses or state exactly what each nurse did to harm him would require the type of rigid inflexibility which is not appropriate when determining the sufficiency of notice under the FTCA.  *See Estate of Trentadue*, 397 F.3d at 852.  The Court determines that, based on the information provided by Plaintiff to the United States in his SF-95 form and its appendix, and the amended SF-95 and its accompanying materials, Defendant was given notice of the claims against the medical personnel who cared for and treated him at the KHC, which included both

---

[4] In other contexts, federal regulations define the term "medical personnel" to include physicians, physician's assistants, and nurses.  *See*  46 C.F.R. § 4.03-6 .

physicians and nurses, and was provided the opportunity to investigate those claims. *See Lopez*, 823 F.3d at 977.

**C. There Is a Disputed Issue of Fact Regarding Whether Plaintiff Timely Filed His Complaint in This Court, Precluding Summary Judgment to Defendant on That Issue.**

1. The Parties' Positions

Defendant argues that Plaintiff's entire lawsuit is time-barred under the FTCA because he filed his lawsuit one day too late and therefore the Court should dismiss Plaintiff's case with prejudice.  [Doc. 62 at 24].  Defendant relies on the FTCA's provision that sets forth the time limitations for bring suit, which states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  According to Defendant, Section 2401(b) therefore required that Plaintiff file his lawsuit within six months after November 27, 2019, the date Defendant claims the DHHS mailed to Plaintiff, by certified mail, its final denial of his claim.  [Doc. 62 at 24].  Defendant contends that Plaintiff did not file his federal lawsuit until May 28, 2020, six months and one day after the denial was mailed, and therefore his lawsuit is barred.  [*Id.*]. To show that the DHHS denial letter was mailed on November 27, 2019, Defendant provides a (heavily redacted) copy of a letter dated November 27, 2019, and signed by Jennifer B. Smith, Acting Deputy Associate General Counsel for DHHS.  [Doc. 62-4].  Copied on to the letter is a United States Postal Service Certified Mail Receipt.  [*Id.*].  Defendant also provides the Declaration of Mary Christofferson, an attorney in the Office of General Counsel for the DHHS, dated August 18, 2023, stating that she conducted a search of the database maintained by the DHHS which contains records of

administrative tort claims filed with the Department.  [Doc. 62-1].  Based on the located records, Ms. Christofferson states that Plaintiff's administrative tort claim, "was denied in writing by certified mail by the Agency on November 27, 2019. . ." [*Id*.].

Plaintiff argues that there is a disputed issue of fact regarding when the DHHS mailed the letter notifying Plaintiff that it was denying his administrative claim. [Doc. 72 at 10, 11].  Plaintiff asserts that it is the Defendant's burden on summary judgment to show that there is no issue of fact regarding when the DHHS placed the denial letter in the mail, and Defendant here has failed to do so.  [*Id*. at 10.]  Plaintiff points out that the Certified Mail Receipt copied onto the last page of the letter is not signed, not dated, and, most importantly, does not contain a postmark showing when the certified letter was actually mailed, as opposed to when it was dated.  [*Id*.]. Furthermore, adds Plaintiff, an affidavit provided in support of summary judgment must present evidence which is admissible and must be based on the personal knowledge of the affiant. [*Id*.] Here, in her declaration, Ms. Christofferson does not allege to have any personal knowledge regarding when the letter dated November 27, 2019, was placed in the mail.  [*Id*.].  In addition, an online search of the U.S. Postal Service tracking number on the denial letter shows that the letter was first registered with the U.S. Postal system at 10:12 p.m. on November 29, 2019, indicating that it was not mailed until one or two days after the date of the letter.  [*Id*. at 10-11].

2.  Analysis

The parties agree that the FTCA's six-month time limit on filing runs from the date the denial notice is properly mailed by certified or registered mail, and that actual receipt by a claimant is irrelevant. *See* 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(a) ("Final denial of an administrative claim shall be in writing and sent to the claimant ... by certified or registered mail.").  A claim, even a meritorious claim, is presumptively barred even if filed six months and one day after the date of

16

mailing by certified mail.  *See id*.  Because of the potential for such a severe consequence, courts have required that the United States provide admissible evidence of the actual date of mailing of a denial letter, not just the date found or stamped on the correspondence.  *See*, *e.g*., *Mortillaro v. United States*, No. 21-CV-852, 2023 WL 2734827, at *1 (E.D.N.Y. Mar. 31, 2023) (denying the Government's motion to dismiss and for summary judgment arguing that FTCA complaint was time barred because the Government failed to provide admissible evidence that the denial letter was mailed on a specific date); *Adams v. United States*, No. 4:CV 03-49-BLW, 2011 WL 1085270, at *3 (D. Idaho, March 18, 2011) (finding that a denial later with no official postmark was insufficient to establish date of mailing, regardless of the date stamped on the letter itself).   The Court agrees with these jurisdictions that the fact the mailing of a denial letter is required to be accomplished by certified or registered mail indicates Congress intended there be proof of the date of mailing given the otherwise harsh result of an untimely filing.   The Court further agrees with the observation that the date of mailing and the date printed on a denial letter are not necessarily the same. *See Hunt v. United* States, No. 07-CV-0112, 2007 WL 2406912, at *2 (N.D.N.Y. Aug. 21, 2007) (finding that the plaintiff's six-month window to commence her FTCA lawsuit began with mailing of denial letter, which was two days after the letter was dated); *see also Adams*, 2011 WL 1085270, at *3.

After reviewing the copy of the letter denying Plaintiff's administrative claim, the declaration of Ms. Christofferson, and the tracking documentation for the denial letter, the Court agrees with Plaintiff that Defendant has not carried its initial burden of presenting evidence sufficient to demonstrate the existence of an undisputed material fact that warrant summary judgment on this issue.   More specifically, the Court finds there remain questions of fact regarding the all-important issue of when the DHHS denial letter was sent by certified mail.   Plaintiff

contends that the USPS tracking record he has provided indicates the denial letter was likely sent on November 29, 2019, because it arrived on that same evening at the USPS facility in Gaithersburg, Maryland, which is within close proximity to the Washington, D.C., address where the letter originated.  [Doc. 72 at 11; Doc 72-1].  Thus, he filed his lawsuit within the six-month period allowed by the FTCA.  As Plaintiff points out, while the denial letter is *dated* November 27, 2019, Defendant provides no admissible evidence to show that the letter was *sent* by certified mail on that same day.  On the second page of the denial later, there is a copy of the Certified Mail Receipt, otherwise known as the USPS Form 3800, which indicates that the correspondence was sent by registered mail to counsel for Plaintiff at counsel's address.   [Doc. 62-4].   However, as argued by Plaintiff, the Form contains no postmark or any other indication as to when the letter was sent by certified mail.  [*See id*.].  According to the Domestic Mail Manual ("DMM"),[5] which provides the United States Postal Service's standards for all domestic mailing services, a sender can request a postmarked sender's receipt by attaching the Form 3800 with the completed receipt to the address side of the article to be sent and then present the article to a United States Postal Service employee, who then round-dates the receipt to determine when the article was accepted. DMM 503.3.2(d).  Here, it is clear the United States did not request a postmarked sender's receipt which would have provided proof of the date the certified letter was mailed.

As noted above, Defendant also provides Ms. Christofferson's declaration in support of its argument that the denial letter was sent of November 27, 2019, and thus Plaintiff's lawsuit was filed one day too late. The Federal Rules of Civil Procedure require that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge. . ." Fed. R. Civ. P.  56(c)(4).  "Under the personal knowledge standard, an affidavit is

---

[5] USPS Domestic Mail Manual, https://pe.usps.com.

inadmissible if 'the witness could not have actually perceived or observed that which [she] testifies to.'" *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir.1997)).   "Accordingly, at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded." *Id*. (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n. 4 (10th Cir.1994)).

Here, Ms. Christofferson's declaration was executed almost four years after the November 2019 denial letter was sent to Plaintiff, and by someone who did not write or sign the denial letter and does not appear to have personal knowledge of the actual date of its mailing.  Instead, Ms. Christofferson simply declares that she conducted a search of the DHHS' database and located the same letter now presented by the Defendant, which is dated November 27, 2019, but contains no information, such as a postmarked receipt, showing when the certified letter was placed in the mail.  The Court finds that, as to the date the letter was sent by certified mail, Ms. Christofferson's declaration must be disregarded on that issue because there is no indication that she actually perceived or observed when that occurred.  Defendant has thus not provided any admissible evidence of the date of the mailing of the denial letter.   Because Defendant has not met its initial burden of showing that there is no genuine dispute as to the date the letter was mailed, which in turn would determine whether Plaintiff timely filed this lawsuit, the Court will deny summary judgment on this issue.[6]  *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at  323.

---

[6] Because Defendant has not met its burden on summary judgment to show the lack of a disputed fact concerning the timeliness of Plaintiff's filing of this lawsuit, the Court finds that it need not reach the merits of Plaintiff's argument that the United States waived its non-jurisdictional statute of limitations defense by, among other things, not pleading it in its Answer to Plaintiff's Amended Complaint and by allegedly stipulating to jurisdiction in the parties' joint submissions to the Court. [Doc. 72 at 8-9].

**D. The Court will Deny Defendant's Motion for Summary Judgment on the Negligence Claims Brought Against the Nurses Because it Was Filed Almost Two Years After the Court-Ordered Deadline for Filing Such Motions.**

Defendant also argues that summary judgment should be granted on the negligence claims brought by Plaintiff against the KHC nurses. [Doc. 62 at 25]. According to Defendant, under the FTCA, the United States can only be "liable for personal injuries caused by the negligent act or omission of a federal employee in circumstances where the United States, if a private person, would be liable to the claimant according to the laws of the place where the incident occurred." [*Id.*] (citing 28 U.S.C. § 1346(b)(1)). Because the alleged negligence occurred in Arizona, Defendant contends that Arizona negligence law applies to Plaintiff's claims against the KHC nurses, which requires expert testimony regarding the breach of the applicable standard of care unless the negligence is so obvious that a layman would recognize it. *See, e.g., Falcher v. St. Luke's Hosp, Med. Ctr*., 506 P.2d 287, 292 (Ariz. Ct. App. 1973). In this case, argues Defendant, Plaintiff has not identified an expert witness who could testify to the nurses' alleged negligence and the deadline for doing so has passed.

There is an obvious problem with Defendant's position on this issue. While on the one hand Defendant requests that the Court dismiss Plaintiff's negligence claims against the KHC nurses because Plaintiff filed to identify an appropriate expert witness when he was required to do so under the Court's Scheduling Order, Defendant's own motion was filed almost two years after the Court's deadline for filing all pretrial motions. [Doc. 34, 7/26/21 Scheduling Order]. As stated in the Order, "Pretrial motions, other than discovery motions, shall be filed with the Court and served on opposing party by December 22, 2021 . . . Any pretrial motions, other than discovery motions, filed after the above date[] shall, in the discretion of the Court, be considered untimely." [*Id.*] There is no question that Defendant's motion is untimely, as it was filed on September 8,

20

2023, approximately 20 (twenty) months after the deadline provided in the Scheduling Order.  The Court will therefore deny Defendant's motion on this issue because it was filed outside the time allowed for the filing of such motions.[7]

## IV.
## CONCLUSION

For the reasons stated above, the Court will Deny Defendant's Motion, without prejudice, on the issue whether the physicians and certain nurses in this litigation were or are federal employees for the purpose of determining subject matter jurisdiction over the claims related to their alleged negligence. The Court will allow Plaintiff to conduct discovery on this issue which must be completed by February 7, 2025, and will be limited to 15 Interrogatories, 15 Requests for Production of Documents, 15 Requests for Admissions, and five (5) Depositions.  These requests for discovery must be submitted to Defendant in a manner that will ensure responses are obtained by the above stated deadline.  Thereafter, but no later than February 21, 2025, Defendant may refile its Motion, limited to ten pages and to the issue concerning the employment status of these physicians and nurses, and Plaintiff may respond to the Motion within 14 days under the same page limitations.   Given that all other deadlines in this litigation have long passed, the Court will not entertain any other pretrial motions.

As to Defendant's Motion related to the exhaustion of administrative remedies, the timing of Plaintiff's filing of this lawsuit, and the claims of negligence against the KHC nurses, the Court will deny the Motion for the reasons stated herein.

---

[7] While the Court has addressed Defendant's other arguments on summary judgment, which were also untimely under the Scheduling Order, it has done so because the issues raised therein related either to the subject matter jurisdiction of the court and, as such, could ostensibly be raised at any time, *see*, *e.g.*, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013), or the arguments related to the statutory deadline for filing suit, *see* 28 U.S.C. § 2401(b).

The Court also Orders that the parties participate in a Settlement Conference no later than January 18, 2025.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative Motion for Summary Judgment (Doc. 62) is **DENIED.**

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE