IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES JAMES ATCITTY,

               Plaintiff,                      No. 1:20-cv-515 DHU-DLM

      v.

UNITED STATES OF AMERICA,

               Defendant.

**REPLY IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT (Doc. 111)**

Plaintiff bears the burden to prove that sovereign immunity has been waived for this court to have subject matter jurisdiction, but he has failed to do so. Defendant's supplemental motion to dismiss is based on the lack of this Court's subject matter jurisdiction and even if there was, the providers who treated Plaintiff are not federal employees, except for three nurses indirectly involved in Plaintiff's care.[1] Subject matter jurisdiction "can never be forfeited or waived." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

Plaintiff failed to respond properly to Defendant's undisputed material facts as required by Rule 56 of the Federal Rules of Civil Procedure; his objections lack the support of evidence in the record. Plaintiff's assertions regarding the lack of contract evidence ignore the contents of the record evidence. Plaintiff's legal arguments regarding the employment status of the subject doctors and nurses fair no better because he ignores the "Lilly Factors" that the court must apply to determine the subject providers' employment status. This Court should dismiss Plaintiff's complaint as to the actions or omissions of contract medical providers.

---

[1] RNs James Ewing, Sherri Roop and Eileen Russell were federal employees at Kayenta Health Center ("KHC") who purportedly took Plaintiff's vital signs on July 6, 2016, and July 11, 2016. Am. Compl., Doc. 5 at ¶¶10 and 11. The Court denied Defendant's motion to dismiss the claims regarding those three nurses for failure to exhaust administrative remedies and for lack of expert testimony regarding the alleged errors by these same providers. See Doc. 83.

## I. UNDISPUTED MATERIAL FACTS[2]

Plaintiff failed to properly dispute the United States' Undisputed Material Facts (UMFs). Rule 56 of the Federal Rules of Civil Procedure provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Similarly, the Local Rules require that "each fact in dispute must . . . refer with particularity to those portions of the record upon which the non-movant relies and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M. LR-Civ. 56.1(b).

In his response, Plaintiff failed to challenge Defendant's UMFs with record evidence. Instead, Plaintiff repeatedly declares a fact to be disputed and raises quarrels that are not material to the UMF at issue. Other disputes constitute argument and the recitation of immaterial facts without citing materials in the record that address or specifically controvert the fact at issue. Plaintiff "cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts or speculation." *Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145, 1182 (D.N.M. 2018). Moreover, "[t]he argument of counsel is not evidence and therefore does not provide a proper basis for denying summary judgment." *Martinez v. Romero*, 2012 WL 13071884 at *3 (D.N.M. Nov. 19, 2012). Instead, Plaintiff "must come forward with specific facts, supported by

---

[2] The United States does not object to the Court applying the summary judgment standard of review. Courts in this district have reviewed similar motions to dismiss based on the independent contractor exception under the summary judgment standard, finding the issue is "intertwined with the case's merits" *Gonzagowski v. United States*, 495 F. Supp. 3d 1048, 1103 (D.N.M. 2020); *De Baca v. United States*, 403 F. Supp. 3d 098, 1129 (D.N.M. 2019). Reviewing a motion to dismiss for lack of subject matter jurisdiction under the summary judgment standard does not make the Rule 12(b)(1) motion to dismiss procedurally improper. *Id.* To argue otherwise, Plaintiff confuses a Rule 12(b)(1) motion challenging subject matter jurisdiction with a Rule 12(b)(6) motion for failure to state a claim. See Doc. 114 at 6 (claiming the motion should be treated under Rule 12(d), which addresses motions under Rule 12(b)(6) and 12(c)).

admissible evidence, which demonstrate the presence of a genuine issue for trial." *Hueston Green v. Garland*, 717 F. Supp. 3d 1070, 1080 (D.N.M. 2024).

In his response, Plaintiff failed to cite record evidence to controvert the UMFs.  For example, in response to UMFs 29, 30, 37, 43, 45, 46, 47, 56 and 58,  Plaintiff asserts that "no valid, binding contracts were produced" (Doc. 114 at 2-4), when in fact Defendant identified and produced the contracts and statements of work entered by I.H.S. and the three medical contracting agencies as evidence in support of the underlying motion to dismiss.  *See* Docs. 62, 62-5, 62-6, 62-7, 70, 70-1, 70-2, 70-3, 70-4, 70-5, 70-6, 70-7, 70-8, 77-1, 77-2, 77-3, 77-4, 77-5 and 77-6.  With respect to UMFs 31, 33, 40, 41, 48, 52, 54 and 55, Plaintiff argues, without support in the record, that Dr. Merino-Navarro and Dr. Ossen were "implied-in-fact employees" of I.H.S. and/or "were not autonomous in their jobs at KHC." Doc. 114 at 2-5.  Regarding UMFs 34, 35, 38, 42, 49, 50 and 51, Plaintiff offers conclusory statements to assert that Dr. Merino-Navarro and Dr. Ossen were "bound by the bylaws on treatment of patients and issuance of referrals" and were "required to follow supervisory duties under the bylaws," without citation to the record or the bylaws. *Id.*

Furthermore, Plaintiff claims to dispute UMFs 29, 30, 36, 37, 43, 45, 46, 47, 53, 56, 57 and 58 by arguing that the contract documents filed in support of the underlying motion are not valid binding contracts between the two doctors and KHC (*Id.* at 2-5), when in fact the valid contracts were between I.H.S. and the medical contracting agencies. With respect to these UMFs, Plaintiff essentially renews his argument that the contracts are "task orders," not fully executed contracts, and do not mention individual doctors.[3]  Plaintiff is incorrect.  In his Declaration for the motion to dismiss (Doc. 62-5), KHC Acting Compliance and Safety Officer Alexander Piña, explains under oath that the attached documents are the contracts and supporting documents for Plaintiff's medical

---

[3] The alleged lack of doctors' signatures is immaterial.  It does not change the analysis of the independent contractor relationship between I.H.S. and the medical contracting companies who supplied the contract medical providers.

providers. He identifies the Non-Personal Services Contract and Statement of Work from VISTA Staffing Solutions (Docs. 62-6 and 62-7) for VISTA employees Dr. Borrego-Acosta, Dr. Ossen and Dr. Wolff.  He also attached two VISTA confirmation letters and a declaration documenting the periods the same three doctors worked at KHC when Plaintiff was a patient. *See* Docs. 70-2, 70-3 and 70-4. Mr. Piña likewise explained that KHC had a Non-Personal Services Contract and Performance Work Statement with AB Staffing Solutions for Dr. Merino-Navarro, who was also a contract physician at KHC during the relevant period (Docs. 70-5 and 70-6), along with AB Staffing confirmation letters for her. Docs. *See* 70-7 and 70-8.  He identified the same contract documents between KHC and Robison Medical Resource Group for nurses Brian Miller and Casey Patton. *See* Docs. 77-5 and 77-6. As part of the record here, these standard contract documents for contract medical providers establish an independent contractor relationship.

In sum, Plaintiff attempts to oppose the UMFs without citation to the record or by showing the materials cited establish genuine issues for trial, as required by Rule 56.  As such, the UMFs remain undisputed and are deemed admitted.

## II. ARGUMENT

### A.   Since there is no waiver of sovereign immunity, subject matter jurisdiction is lacking.

"Subject-matter jurisdiction defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). "[I]t represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (internal quotation marks and quoted authority omitted). The parties cannot waive or consent to subject matter jurisdiction when, as here, it is lacking. *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017).

"Sovereign immunity is jurisdictional in nature.  Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *FDIC v. Meyer*, 510

4

U.S. 471, 475 (1994) (internal quotations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.*; *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006).

The Court's authority to hear this suit is defined and limited by the provisions of the Federal Tort Claims Act. *In re Franklin Sav. Corp.,* 385 F.3d 1279, 1289 (10th Cir. 2004). "The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal ***employees*** acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813 (1976) (emphasis added). The FTCA does not, therefore, authorize suits based on the acts of independent contractors or their employees. *Curry v. United States*, 97 F.3d 412, 414 (10th Cir. 1996).

Plaintiff seeks to expand the scope of the Government's waiver of sovereign immunity to create an employment relationship where none was intended, and where multiple Courts, including this one, have declined to do so under similar facts and circumstances. Plaintiff's position is unsupported by the law. He broadly asserts that the subject doctors were employees under the day-to-day control of the United States because they were credentialed by KHC and followed its bylaws. Doc. 114 at 7-10. Credentialing and adherence to hospital bylaws does not change the analysis of the employment status of the providers.[4] The Supreme Court explained that the determination of whether the alleged tortfeasor is a government employee, or a contractor, rests on the

---

[4] *Duplan v. v. Harper*, 188 F.3d 1195, 1201 (10th Cir. 1999) (right of the government to inspect work to determine contract doctors meet minimum qualifications and for quality assurance does not automatically convert a contractor to government employee . . . being subject to hospital's rules as a condition of staff privileged does *not* remotely make a private physician an employee of that hospital.) (emphasis in original).

authority of the United States "to control the detailed physical performance" of the contractor and the issue of whether a contractor relationship exists is a matter of federal law. *Logue*, 412 U.S. at 527-28. As argued *infra,* the Tenth Circuit and this Court have analyzed this question for decades based upon the factors in *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir. 1989).

As with any jurisdictional issue, the party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived. *See James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992). Plaintiff fails to meet his burden to establish subject-matter jurisdiction because he failed to demonstrate a statutory waiver of the United States' sovereign immunity based on alleged torts of non-government employees. Since Defendant has attacked the basis for jurisdiction, "the court does not presume the truthfulness of factual allegations in the complaint but may consider evidence to resolve disputed jurisdictional facts." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Such evidence includes proof of that the medical providers at issue were not federal employees.

**B. The Parties' Clear Intent Was To Create An Independent Contractor Relationship.**

As noted, in making the federal employee / independent contractor distinction, the critical element in distinguishing an employee from a contractor is the power of the Federal Government "to control the detailed physical performance of the contractor." *Logue,* 412 U.S. at 527-28. It is of no consequence "whether [the entity] receives federal money and must comply with federal standards and regulations." *Orleans*, 425 U.S. at 815 (footnote omitted). The employees of contractors, "whose physical performance is not subject to government supervision" are not to be treated as "acting on behalf of" a federal agency and are not covered by the FTCA. *Logue*, 412 U.S. at 531-32.

As applied to a physician, the Tenth Circuit has recognized that since a physician must have discretion to care for a patient, and may not surrender control over certain medical details, any control test is complicated by a doctor's ethical obligation to exercise their professional discretion

in performing their duty. *Lilly v. Fieldstone*, 876 F.2d 857, 860 (10th Cir. 1989). Since a physician's ethical obligations foreclose a strict control test in determining whether a physician is a government employee, the Tenth Circuit must "determine whether ***other evidence*** manifests an intent to make the professional an employee subject to other forms of control which are permissible." *Lilly*, 876 F.2d at 859 (emphasis added).

The Tenth Circuit identified seven factors to consider in making this determination: 1) intent of the parties; 2) whether the United States controls only the end result or may also control the manner and method of reaching the result; 3) whether the person uses his own equipment or that of the United States;  4) who provides liability insurance; 5) who pays social security tax; 6) whether federal regulations prohibit federal employees from performing such contacts; and 7) whether the individual has authority to subcontract to others. *Id*.  In other words, it is not simply the day-to-day oversight of a physician that is determinative of the independent contractor issue for a physician, but rather, the application of the seven factors set forth by the Tenth Circuit.

A factual inquiry is therefore necessary. *Woodruff v. Covington*, 389 F.3d 1117 (10th Cir. 2004). *Woodruff* holds that where there is a contract between the government and the physician, "clear language regarding government control or 'federal employee' status can often prevail over facts that might otherwise support a finding of 'day-to-day control.'" *Id.* 389 F.3d at 1126.  "Non personal service contracts," which we have here, are contracts under which the personnel rendering the services are not subject, either by contract terms or through performance, to the supervision and control usually prevailing in relationships between the government and its employees. 48 CFR 37.101. They are contracts under which the Contractor is specifically designated an independent contractor. *Horn v. United States*, 98 Ct. Cl. 500, 502, n.3 (Ct. Cl. 2011).

The federal circuits have consistently held that physicians in either private practice or associated with an organization under contract to provide medical services to facilities operated

by the federal government are independent contractors, and not employees of the government for FTCA purposes. *See Robb v. United States*, 80 F.3d 884, 890 (4th Cir.1996)(applying control test properly includes analysis of contractual relationship) (collecting cases); *Lurch v. United States*, 719 F.2d 333, 338 (10th Cir.1983)(holding that the contract and working arrangement under it controls nature of relationship); *Ohlsen v. United States,* 998 F.3d 1143, 1155 (10th Cir. 2021) (The FTCA does not allow suits based on the acts of independent contractors or their employees. Because the contract did not establish the Isleta Pueblo fire crewmembers were federal employees under the FTCA, in applying the *Lilly* test, the district court was correct in finding the crewmembers were independent contractors, thus barring suit against the United States).

Here, the express language of the three non-personal service contracts identifying the medical providers as independent contractors, coupled with the lack of evidence manifesting any intent to create an employee relationship leads to only one conclusion – the four physicians and two nurses who Plaintiff identifies in his Complaint,[5] were contractors and not federal employees. *See* Suppl. Motion, Doc. 111, at 10-14 (applying seven-factor *Lilly* test).  In his response, Plaintiff fails to analyze the *Lilly* factors as to Doctors Merino-Navarro and Ossen or the other medical providers at issue but instead incorrectly asserts that because they were placed at KHC by their staffing companies, were credentialed by I.H.S., and followed KHC bylaws, they were under the day-to-day control of I.H.S.[6] Doc. 114 at 10-11.  Plaintiff mistakenly rests on this conclusion solely based on *Logue.* Later cases in this Circuit have explained the seven factor *Lilly* test is the correct standard to apply. Yet Plaintiff fails to cite any cases from this Circuit or District Court.

---

[5] Plaintiff alleges in his Amended Complaint that he presented to Kayenta Health Center, on July 6, July 11, August 1, and September 6, 2016, with a "deadly infection emanating from [his] lower back," but that Doctors Jose Acosta, Jon Ossen, Noall Wolff and Sandra Merino-Navarro, and nurses James Ewing, Eileen Russell, Brian Miller, Sherri Roop, and Casey Patton, "negligently failed to diagnose, misdiagnosed, failed to treat, and mistreated" him. Doc. 5 ¶¶ 4, 5, 10, 11, 13, 14.

[6] See Note 4, supra. Credentialing medical providers and requiring them to follow bylaws does not convert a contractor to government employee. *Duplan v. v. Harper*, 188 F.3d 1195, 1201 (10th Cir. 1999).

**C. Tenth Circuit Case Law and Case Law in this Court Support the Government's Position.**

Controlling law in this Circuit dictates that the subject medical providers were independent contractors. *See, e.g., Ohlsen v. United States,* 998 F.3d 1143, 1155 (10th Cir. 2021)(discussed *supra); Tsosie v. United States,* 452 F.3d 1161, 1164 (10th Cir. 2006) (holding emergency room doctor at government-owned hospital was an independent contractor under the seven-factor test); *Duplan v. Harper*, 188 F.3d 1195, 1200 (10th Cir. 1999) (concluding doctor at Air Force clinic was not a government employee but rather the employee of Med-National who contracted with the government to provide medical services at the clinic); *Lurch v. United States*, 719 F.2d 333, 338 (10th Cir.1983) (The contract and working arrangement under it controls nature of relationship).

In *Lurch v. United States*, 719 F.2d 333, 337–38 (10th Cir. 1983), on facts very similar to those related to the contract doctors and nurses identified in this case, the Tenth Circuit specifically stated that "the contractual arrangement itself and its application placed [the physician] outside the parameters of an employer-employee relationship with the Government" . . ."the contract expressly stipulate that 'such [medical] personnel shall not be considered VA employees for any purpose.'" As in *Lurch*, KHC, through the I.H.S., had three non-personal services contracts under which the medical staffing contractors had the authority to choose which providers would fulfill the contract obligations. In the words of the Tenth Circuit: "This is not consonant with a traditional employer-employee relationship." *Lurch*, 719 F.2d at 338.

More recently, in *Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006), the Tenth Circuit concluded that, pursuant to the *Lilly* factors, the language of the contract at issue reflected an intent to create an independent contractor relationship. The contract required the contracting company to provide professional medical services in both inpatient and outpatient settings, including emergency room physicians on an "as needed" basis. *Id.* As to the first *Lilly* factor, the contract stated: "It is expressly agreed and understood that this is a nonpersonal services contract

9

. . . under which the professional services rendered by the Contractor are rendered in his capacity *as an independent contractor.*" *Id.* (Emphasis in original). The Court also held the second *Lilly* factor was met since the contract provided, "the government may evaluate the quality of professional services provided *but retains no control over professional aspects of the services rendered,* including by example, the contractor's professional medical judgment, diagnosis or specific medical treatments." *Id.* The contracts at issue here contain these two identical provisions. Plaintiff offers no basis to distinguish this case from controlling Tenth Circuit authority.

In *Waconda*, this Court analyzed non-personal services contracts identical to those at issue in this case governing independent contractor physicians working for the Acoma-Cañoncito-Laguna Hospital under the auspices of the H.H.S. and Indian Health Services. *Waconda v. United States*, 06-cv-101 JB/ACT, 2007 WL 2219472 (D.N.M. May 23, 2007). Applying the *Lilly* factors, this Court concluded that the agreement clearly reflected the parties' express intent to create an independent contractor relationship, even though the contract also stated that "the [United States] may evaluate the quality of professional and administrative services" and the facility retained some control over how "the physicians were to perform their contracts, and in particular, certain supervision, inspection, record-keeping, consultation and treatment program provisions." 2007 WL 2219472 *12. The Court noted the Tenth Circuit's view that "being subject to [a] hospital's rules as a condition of staff privileges does not remotely make a private physician an employee of that hospital." *Waconda*, 2007 WL 2219472 *12 (*citing Lilly v. Fieldstone,* 876 F.2d at 860); *See also Duplan v. Harper*, 188 F.3d at 1200-02 (holding physician was an independent contractor despite being subject to hospital quality control regulations, bylaws, record-keeping requirements, dress code, and office hours, in addition to the contract itself and delineation of responsibility and insurance liability provisions).

In *Begay v. United States,* 188 F. Supp. 3d 1047, 1082-86 (D.N.M. 2016), a medical negligence

10

case for alleged failure to properly diagnose the patient and transfer him to a higher level of care, this court analyzed a non-personal services contract with terms very similar to those at issue in *Tsosie* and here, and concluded that the United States did not waive sovereign immunity under the FTCA. The court determined that, under the application of the *Lilly* factors, the physician was an independent contractor and not a federal employee since he was a contractor for a healthcare company, and under that company's contract with Northern Navajo Medical Center, the medical services the company provided were to be rendered its capacity as an independent contractor. *Id.*[7]

Authority in this Circuit is clear—the individual medical providers from VISTA Staffing, AB Staffing and Robison who cared for Plaintiff were not federal employees. Accordingly, Plaintiff failed to meet his burden to establish that the United States waived sovereign immunity.

**C. Plaintiff misunderstands the independent contractor relationship.**

An essential element "in distinguishing an [employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. at 814 (1976). In other words, the issue is not whether a contractor "receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815. In the Tenth Circuit, the applicable test for employment status is as set forth in *Woodruff v. Covington*, 389 F.3d 1117, 1126 (10th Cir. 2004) (citing *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989)). In *Woodruff*, the Tenth Circuit enumerated seven factors ("*Lilly* factors") that the District Court should consider

---

[7] The court reasoned that pursuant to the contract, the healthcare company was to be solely liable and to expressly indemnify the United States with respect to any liability producing acts by its employees or agents. *Id.* The subject physician was not under the day-to-day control or supervision of the United States but rather exercised his independent medical judgment for the patient's care and treatment. *Id.* The court concluded that after weighing each of the *Lilly* factors as required by the Tenth Circuit, the United States did not maintain the right to control the doctor to the extent sufficient to undermine her status as an independent contractor. Plaintiffs failed to establish a genuine issue of material fact whether the court had subject matter jurisdiction, thus resulting in summary judgment for the United States. *Id.*

in determining whether a contractor may be considered a federal employee under the FTCA. *Id.* Pursuant to this analysis set forth in the underlying and supplemental motion, the Court should conclude that Doctors Merino-Navarro, Ossen, Borrego-Acosta and Wolff, and R.N.s Miller and Patton were not federal employees, but rather employees of their contracting agencies.

Plaintiff ignores the Lilly factors. Rather, he asserts that the United States is not shielded from liability under the independent contractor exception because the treating medical providers were "implied-in-fact" employees of KHC. Doc. 114 at 1, 2 and 4. Instead of applying the law in the Tenth Circuit, as this court must do, Plaintiff relies on *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025 (Ariz. 1985), in which the Supreme Court of Arizona held that in a wrongful discharge action by an "at will" employee, there was a genuine issue of material fact, as to whether provisions in an employee manual regarding disciplinary policy and procedures had become part of an employment contract, thus precluding summary judgment for the employer. *Id.* at 1038. *Wagenseller* considered whether an at-will nurse employee had certain rights and remedies under Arizona employment law after her termination by a private Arizona hospital. It does not address whether a medical provider is a federal employee and is inapposite to the standard under *Lilly* and its progeny that this court must apply to evaluate the employment relationship here.

Rather, the Court must first decide a preliminary question—whether the United States waived sovereign immunity for Plaintiff's claims based on the actions of independent contractors. That question is decided by reference to federal law—and specifically the FTCA and 28 U.S.C. § 2671, which defines "employee of the government:"

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States but *does not include any contractor with the United States*.

> "Employee of the government" includes (1) officers or employees of any federal agency...

28 U.S.C. § 2671(emphasis added); *United States v. Orleans*, 425 U.S. at 813–14 (1976) ("The Act defines Government employees to include officers and employees of 'any federal agency' but excludes 'any contractor with the United States.' 28 U.S.C. § 2671.") (Internal brackets omitted). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver."

Next, in applying the *Lilly* factors the court should conclude that there was an independent contractor relationship between the government and the three medical contracting companies. The United States demonstrated in its underlying motion that Doctors Merino-Navarro, Ossen, Borrego-Acosta and Wolff, and Nurses Miller and Patton were not federal employees. Doc. 62. Defendant augmented those arguments in its supplemental motion with additional record evidence through the depositions of Dr. Merino-Navarro and Dr. Ossen. Plaintiff failed to properly dispute the undisputed material facts regarding their status as contractors or otherwise show that the United States exercised day-to-day control and supervision of the listed contract medical providers, all of whom were employed by three different medical staffing companies. Thus, the United States is not liable for damages that may have resulted from these providers' acts or omissions.

Moreover, Plaintiff ignores the contractual terms establishing that the subject contracts were non-personal services contracts, and the providers were independent contractors. Docs. 62-5 ¶¶ 3, 9, 14; 62-7 at 2; 70-5; 70-6. Rather, Plaintiff asserts that contract medical providers at KHC worked under the oversight of Medical Directors and pursuant to bylaws but says nothing regarding the day-to-day supervision of the same providers.

WHEREFORE based upon the foregoing points and authorities, as well as those in the underlying motion, the United States respectfully requests that the Court grant the pending motion to dismiss, or in the alternative for partial summary judgment.

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
RYAN ELLISON
First Assistant United States Attorney

*/s/ Roberto D. Ortega 3/31/26*
ROBERTO D. ORTEGA
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
Roberto.ortega@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I filed the foregoing pleading electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Roberto D. Ortega 3/31/26*
ROBERTO D. ORTEGA
Assistant United States Attorney

14