**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CHARLES JAMES ATCITTY,

Plaintiff,

v. 1:20-cv-00515-DHU-DLM

THE UNITED STATES OF AMERICA,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant United States of America's ("United States," or "the Government") Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 111). The Court denied Defendant's first iteration of this Motion (Doc. 62, hereinafter primarily referred to as the "Original Motion"), allowing the parties to conduct additional discovery on the matter of whether the physicians and nurses who treated Plaintiff were independent contractors rather than federal employees for purposes of the Federal Tort Claims Act ("FTCA"). Doc. 83 at 21. The Court permitted the United States to refile its motion solely on this issue after discovery, which it has done. *Id.* After carefully considering Defendant's Supplemental Motion, the attendant briefs, and the relevant and applicable law, the Court concludes that the motion should be **GRANTED IN PART**.

# I. BACKGROUND

## A. Procedural History

The Court previously addressed the facts and procedural history of this case in its Memorandum Opinion and Order denying the Government's Original Motion. *See* Doc. 83 at 1-4. Therefore, the Court need not restate at length the same here. As a brief summary, in 2016, Plaintiff, Charles James Atcitty, an enrolled tribal member of the Navajo Nation, sought medical treatment at the Kayenta Health Center Hospital ("KHC") of the Indian Health Service ("IHS"), an agency of the United States Government within the Department of Health and Human Services ("HHS"). Doc. 5, Pl.'s Am. Compl. ¶ 1. On July 6, July 11, August 1, and September 6, Atcitty alleges that four different physicians and five different nurses (also referred to collectively as "medical providers") treating him at KHC acted negligently because they "failed to diagnose, misdiagnosed, failed to treat, and mistreated" him, resulting in injuries including a potentially fatal sepsis infection, spinal injury, damage to the heart and other organs, and disability. *Id.* ¶¶ 4-5, 11-14, 17.

Atcitty sued the United States under the FTCA, alleging the Government is liable for the nine providers' medical negligence because they are all federal employees. *Id.* ¶¶ 5, 7. The Government concedes that three of the nurses involved in Atcitty's care, James Ewing, Sherri Roop, and Eileen Russell, were federal employees at KHC. *See* Doc. 119 at 1 n.1. Each of the six other providers involved in Atcitty's care were affiliated with private staffing agencies and worked at KHC through agreements between their respective employer and KHC. Specifically, during some or all of the time period relevant to this lawsuit, Dr. Jose Borrego-Acosta, Dr. Jon A. Ossen, and Dr. Noall Wolff were provided to work as emergency physicians at KHC by VISTA Staffing Solutions, Inc. ("VISTA"). Doc. 62-5 (Exhibit C, Declaration of Alexander H. Piña) ¶¶ 3-8. During

all of the dates relevant to this lawsuit, Dr. Sandra Merino-Navarro was provided to work as a physician at KHC by AB Staffing Solutions, LLC ("AB Staffing"). *Id.* ¶¶ 9-11. And between August 15 and September 30, 2016, Nurses Brian Miller, R.N., and Casey Patton, R.N. were provided to work at the KHC Emergency Department by Robison Medical Resource Group, LLC ("Robison"). *Id.* ¶¶ 14-16. Plaintiff brings claims for both negligence and loss of consortium and seeks compensatory damages, as well as costs and fees. Doc. 5 at 19-25.

**B. Government's Original Motion to Dismiss**

On September 8, 2023, the United States filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion for Summary Judgment (Doc. 62). In the Original Motion, the Government asserted multiple grounds for dismissal. First, the Government argued that this Court lacks subject matter jurisdiction because Atcitty's claim is based on the purported negligence of medical providers who are not employees of the federal government for purposes of the FTCA. Doc. 62 at 13-22.[1] Second, Defendant argued that Plaintiff failed to exhaust his administrative remedies as it relates to the five nurses identified in his Complaint. *Id.* at 22-23. Alternatively, the United States asserted that summary judgment was warranted because Plaintiff failed to file his complaint six months after the denial of his administrative claim, and Plaintiff's negligence claims against the nurses fail because he has no evidence of a breach of the standard of care or causation. *Id.* at 23- 27. In support of its Motion, the Government attached exhibits in the motion itself, as well as two additional filings. *See* Docs. 62, 70, 77.

[1] The Government did not address the employment status of three of the nurses—Nurses Ewing, Russell, and Roop—in its Original Motion. The Court therefore assumed in its previous Memorandum Opinion and Order that the Government was conceding that these nurses are federal employees. Doc. 83 at 7 n.2. The Government confirmed this in its Reply in Support of the Supplemental Motion. Doc. 119 at 1 n.1.

On September 9, 2024, the Court denied the motion. The Court found that Plaintiff sufficiently exhausted his administrative remedies against the KHC nurses, Doc. 83 at 11, and that a disputed issue of fact precluded summary judgment on the issue of whether Plaintiff timely filed his Complaint in this Court, *id.* at 15. The Court also denied summary judgment on the negligence claims against the nurses, finding that the Government did not raise these arguments within the Court-ordered deadline for doing so. *Id.* at 20. Defendant's motion was denied on these bases.

In addition, the Court denied summary judgment without prejudice based on the alleged status of six of the medical providers as independent contractors, rather than federal employees. *Id.* at 7. The Court declined to make a finding as to the relevant providers' employment status, resting its decision on the fact that many of the documents relied upon by the Government were never produced to Plaintiff. The Court allowed Atcitty to conduct additional discovery and permitted the United States to re-file a motion focused solely on this issue. *Id.* at 10, 21.

**C. Government's Supplemental Motion to Dismiss**

On January 12, 2026, the United States filed a Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 111). In it, the United States reiterates its argument that Atcitty cannot sue the federal government because the allegedly negligent medical providers are not federal employees as defined by the FTCA. Doc. 111 at 2. The United States incorporated the twenty-eight undisputed material facts ("UMFs") asserted in its Original Motion, Doc. 62 at 2-6, and added twenty more, drawing primarily from the deposition testimony of Drs. Ossen and Merino-Navarro, Doc. 111 at 2-7. Applying these purportedly undisputed facts to each of the factors set out in *Lilly v. Fieldstone*, the Government argues that the FTCA bars this lawsuit under the independent contractor exception. Doc. 111 at 10. According to the United States, the medical providers' contracts and statements of work show that the parties intended an independent

contractor relationship, and the physicians' deposition testimony, together with the rest of the evidence presented, demonstrate that they were not subject to sufficient supervision or scrutiny by federal employees to bring them within the coverage of the FTCA. *Id.* at 10-12. Each of the remaining *Lilly* factors, according to Defendant, is either neutral or favors a finding that the providers were independent contractors. *Id.* at 12-14.

On February 17, 2026, Atcitty filed his Response to the Supplemental Motion (Doc. 114). Atcitty incorporates his responses to the UMFs in Defendant's Original Motion and disputes all but two of the additional UMFs asserted in the Supplemental Motion. Doc. 114 at 1-5. He argues that the United States has not met its burden of proof to establish that the medical providers were independent contractors. *Id.* at 1. First, Atcitty contends that, because KHC provides health care for the IHS, these medical providers "act[ed] on behalf of a federal agency" and are therefore federal employees under the FTCA. *Id.* at 8 (quoting 28 U.S.C. § 2671). He points to the fact that the providers in this case were credentialed by KHC, received privileges from KHC/IHS to provide health care services at KHC, and were subject to the same rules and By Laws as physicians directly employed by the Government. *Id.* at 7-8. Plaintiff cites to similar evidence to emphasize that the physicians were under the day-to-day control of KHC, making them federal employees under *Logue v. United States*, 412 U.S. 521 (1973). *Id.* at 10-11. Finally, Atcitty argues that the Task Orders, Performance Based Statements of Work ("PBSOW"), and Performance Work Statements ("PWS") produced by the United States cannot be considered binding contracts because they fail to meet the contract execution requirements laid out in the Federal Acquisition Regulations. *Id.* at 11-15. Atcitty urges the Court to deny Defendant's Supplemental Motion. *Id.* at 16.

On March 31, 2026, the United States filed its Reply (Doc. 119)). The Reply reiterates that the parties' clear intent was to create an independent contractor relationship and cites to Tenth

Circuit case law in support of its position. The Government highlights the fact that Atcitty did not explicitly analyze the *Lilly* factors and argues that Plaintiff failed to show that the United States exercised day-to-day control and supervision of the medical providers. Doc. 119 at 12-13.[2]

After the briefing was complete, Plaintiff submitted two Notices of Errata, adding missing citations and altering several existing ones.[3] On August 20, 2026, Plaintiff filed a Consolidated Response, incorporating the additions from both errata into the original Response. *See* Doc. 138-1. For ease of reference, the Court will cite to the Consolidated Response throughout this Memorandum Opinion and Order.

The United States submitted a Supplemental Reply on July 31, 2026, which outlines the federal procurement framework under the Federal Acquisition Regulations (Doc. 133). The Government argues that Plaintiff misconstrues the nature of the Task Orders in this case and asserts that they are binding contracts which provide evidence of intent as well as lack of control over the medical providers. Doc. 133 at 6.

Plaintiff objected to the consideration of this Supplemental Reply, given that it was filed outside the briefing schedule without leave of Court. *See* Doc. 136. At the hearing in this matter, the Court gave Plaintiffs an opportunity to submit a response to the Supplemental Reply and indicated it would consider the additional briefs together. Doc. 137 (Clerk's Minutes) at 2, 5. On

---

[2] The United States' Reply also points out that Atcitty's Response (Doc. 114) does not conform to the federal and local rules that require citing to materials in the record for any facts in dispute. Doc. 119 at 2. However, this is cured by the two Notices of Errata filed by Plaintiff (Docs. 121, 129), also reflected in Plaintiff's Consolidated Response (Doc. 138).

[3] The United States initially filed a Motion to Strike the first Notice of Errata (Doc. 122), prompting Plaintiff's Response and Cross-Motion to Strike Defendant's Motion to Dismiss and in the Alternative Motion for Summary Judgment (Doc. 123). On May 29, 2026, however, the United States withdrew its Motion to Strike (Doc. 125). On July 10, 2026, Plaintiff filed a Notice of Supplemental Errata (Doc. 129), with no objection from the Government. The contents of both Notices of Errata will therefore be considered alongside Atcitty's Response.

August 27, 2026, Atcitty responded to the Supplemental Reply. Doc. 139. In the Response, Plaintiff does not dispute that a Task Order can create binding obligations but argues that here, the Task Order and Statements of Work do not conclusively determine each provider's employment status because it does not connect each provider and treatment date to an operative agreement. *Id.* at 2-4. Plaintiff acknowledges there is some other evidence of the parties' intent, like the Piña Declaration and confirmation placement letters, but asserts that "they do not make a different agreement's contents and effective dates undisputed." *Id.* at 4.

## II. LEGAL STANDARD

### A. 12(b)(1) Motions to Dismiss

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A motion to dismiss for lack of subject matter jurisdiction, filed under Fed. R. Civ. P. 12(b)(1), is typically either "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). For a factual challenge, the Court may consider documents like affidavits and even a limited evidentiary hearing to ascertain the facts pertinent to its subject matter jurisdiction without converting it from a 12(b)(1) motion. *Holt*, 46 F.3d at 1003 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

A 12(b)(1) motion ordinarily cannot be converted to a motion for summary judgment. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) (citing *Nichols v. United States*, 796 F.2d 361, 366 (10th Cir. 1986)). However, when the jurisdictional and merits questions are "intertwined"—meaning the resolution of one is necessary for the resolution of the other—then

the issue must be converted into a 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *Id.* (citations omitted).

**B. Motions for Summary Judgment**

A party is entitled to summary judgment "if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it can have an impact on the outcome of the lawsuit[.]" *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021). The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005). At this stage, the nonmoving party is entitled to all reasonable inferences from the record. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013).

**C. Federal Tort Claims Act**

The federal government is immune from suit unless Congress expressly waives that immunity. *See, e.g., Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal

sovereign immunity is that the United States cannot be sued at all without the consent of Congress."). The Federal Tort Claims Act provides "a limited waiver of sovereign immunity, making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Lopez v. United States*, 823 F.3d 970, 975-76 (10th Cir. 2016) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)); *see also* 28 U.S.C. § 1346(b)(1). However, the FTCA explicitly excludes independent contractors from its definition of a federal employee covered by the Act. 28 U.S.C. § 2671; *see also Logue*, 412 U.S. at 528. Suits involving the alleged negligence of independent contractors therefore do not fall under the FTCA's waiver of sovereign immunity, and courts lack subject matter jurisdiction to hear the claim.

To determine whether the United States can be sued under the FTCA, and whether subject matter jurisdiction exists, the Court must determine whether the alleged tortfeasors were acting as federal employees or independent contractors. The "critical question" in making such a determination is whether the federal government has the power to control the detailed physical performance of the individual. *Duplan v. Harper*, 188 F.3d 1995, 1200 (10th Cir. 1999). Under this "control test," courts analyze whether the government supervises the individual's day-to-day operations. *Id.* When the individual at issue is a physician, however, the Tenth Circuit has recognized that strict application of the "control test" is not appropriate given physicians' duty to exercise their own professional judgment and maintain discretion over patient care. *Lilly v. Fieldstone*, 876 F.2d 857, 858-59 (10th Cir. 1989) (citing *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir. 1983)). To account for this, the Tenth Circuit has adopted several factors that courts must consider in their analysis, commonly known as the "*Lilly* factors." *Ohlsen v. United States*, 998 F.3d 1143, 1157 (10th Cir. 2021) (citing *Lilly*, 876 F.2d at 859). They include:

> (1) [T]he intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Id.*

**III.**
**DISCUSSION**

As an initial matter, the United States' Supplemental Motion is framed as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Doc. 111 at 1. However, neither party objects to the Court treating the Government's motion as a Motion for Summary Judgment. The Court agrees that this is the best approach. First, the jurisdictional and merits questions are intertwined in this case because determining whether the medical providers are federal employees bears on the existence of jurisdiction *and* the merits of the claim under the FTCA. *See, e.g., Wheeler*, 825 F.2d at 258-59 (concluding the same in the context of the federal discrimination statutes where there was a dispute about whether the individual qualified as an employee and could therefore bring a claim against her former employer). In addition, the Court will need to consider matters outside the pleadings to rule on this motion—namely, the evidence obtained through discovery relied upon by the United States in its Supplemental Motion. *See* Doc. 111 at 2-7 (also incorporating evidence from the Initial Motion, Doc. 62 at 2-6). The Court will therefore treat Defendant's Supplemental Motion as a motion for summary judgment under Fed. R. Civ. P. 56.

In its Supplemental Motion, the Government contends that this Court lacks subject matter jurisdiction to consider claims of negligence against six of the medical providers because they are not federal employees and therefore not covered by the United States' waiver of sovereign

immunity under the FTCA. Doc. 111 at 10-14. Plaintiff purports to dispute that these providers were placed at KHC by staffing agencies who paid their medical malpractice liability insurance. Doc. 72 at 3. He also supposedly disputes the Government's assertion that KHC did *not* pay wages or provide benefits to these providers. *Id*. Plaintiff insists that the four physicians and two nurses at issue were federal employees because of the level of supervision and control exercised by KHC over their day-to-day operations. Doc. 138-1 at 13-15. The Court will analyze the employment status of each of the six providers in turn, applying the *Lilly* factors to assess the level of control exercised by the Government over each provider's performance.[4]

**A. Dr. Merino-Navarro, of AB Staffing**

1. <u>*Lilly* Factor 1: Intent of the Parties</u>

The parties relevant to this first factor—KHC (a Government entity), AB Staffing, and Dr. Merino-Navarro herself—clearly intended an independent contractor relationship. With their Original Motion, the United States submitted a Declaration from KHC's Acting Compliance and Safety Officer, Alexander H. Piña. Doc. 62-5 (Exhibit C) (hereinafter, the "Piña Declaration").[5] In the Declaration, incorporated into the Supplemental Motion, Mr. Piña states that KHC had a non-personal services contract with AB Staffing, under which AB Staffing agreed to provide licensed physician services at KHC. *Id.* ¶ 9. The Government argues that the intent of the parties is evidenced by the Task Order issued by KHC to AB Staffing and the applicable Performance Work

---

[4] Plaintiff did not directly address the *Lilly* factors in his Response, but the Court finds it necessary to do so under binding Tenth Circuit precedent.

[5] In response to the United States' Original Motion, Plaintiff "reject[ed] Defendant's Exhibit C, because it is new evidence submitted after the close of discovery." Doc. 72 at 3. However, in denying that Original Motion, the Court reopened discovery for a limited period of time to correct this deficiency. The Court will therefore consider the Piña Declaration in its consideration of the present Supplemental Motion. The Court also notes that during reopened discovery, Plaintiff did not depose Mr. Piña.

Statement ("PWS"), both exhibits to the Piña Declaration. Doc. 111 at 10. The Task Order lists AB Staffing as the contractor and specifies that "[t]his is a Non-Personal Service Contract Task Order issued against VA Contract No. V797D-40126." Doc. 70-5 (Exhibit C-6) at 1. This supports the Government's argument, as non-personal services contracts are defined in the Federal Acquisition Regulations as those "under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the Government and its employees." 48 C.F.R. § 37.101. Plaintiff correctly points out that the Task Order references a regulation governing termination of personal services contracts. Doc. 138-1 at 18 (citing Doc. 70-5 at 4). But the Court is not convinced that this, by itself, evinces an intention to form an employee relationship when the front page of the Task Order states it is for non-personal services.

Similarly, the PWS cited by the Government affirms the "non-personal service" nature of the contract and sets forth the terms under which the "Contractor" will perform services for the Government, including the physician's duties under the contract, provision of equipment, qualification requirements, and the like. Doc. 70-6 (Exhibit C-7) at 7-15. Most importantly, the PWS explicitly states that the "professional services rendered by the Contractor are rendered in its capacity as an *independent contractor*." *Id.* at 14 (emphasis added). Based on that understanding, the PWS makes clear that "the Contractor shall be solely liable for" any acts or omissions giving rise to liability, and it requires the Contractor to maintain its own liability insurance and indemnify the Government. *Id.*; *see also* UMF 43 (citing Doc. 111-1 (Exhibit F, Deposition of Dr. Merino-Navarro) at 69:23-70:3). The PWS also specifies that the Contractor shall wear a "government issued *contractor* identification badge" during performance of duty. Doc. 70-6 at 10 (emphasis

added). These documents support the Government's position that the parties intended an independent contractor relationship.

Plaintiff disputes the facts drawn from these documents because the Government did not produce the underlying master contract, the Task Order is not signed by AB Staffing, and the PWS does not reference AB Staffing or Dr. Merino-Navarro specifically. Doc. 138-1 at 2, 5-6; *see also* Doc. 139 at 3. In her deposition, Dr. Merino-Navarro also testified that she had not seen the PWS before. *Id.* at 5 (citing Merino-Navarro Dep. at 40:20-41:4, 18-21). In Plaintiff's view, these gaps defeat Defendant's Supplemental Motion, because the Government has not produced evidence of binding contracts establishing the providers were independent contractors. *Id.* at 17-19.

Whether the relevant parties complied with the Federal Acquisition Regulations and established a binding contract would be important to consider if one party sought to enforce the other's obligations under the Task Order or PWS. But that is not the question before this Court. Rather, the question at hand is whether KHC, AB Staffing, and Dr. Merino-Navarro *intended* to form an independent contractor relationship—irrespective of whether they successfully executed documents confirming the relationship. Taken as a whole, the undisputed facts in the record demonstrate such an intention. The Piña Declaration fills in the gaps identified by Plaintiff, confirming that Dr. Merino-Navarro worked pursuant to the—admittedly unsigned—AB Staffing Task Order and that the PWS cited was affiliated with the contract with AB Staffing. Doc. 62-5 ¶ 9. The fact that Dr. Merino-Navarro was not personally familiar with the PWS is not sufficient to dispute this fact when the testimonial evidence from Dr. Merino-Navarro herself confirms that she understood herself to be working as a contractor, rather than a federal employee, and that she regularly told patients as much. UMF 29 (citing Merino-Navarro Dep. at 68:10-25); UMF 39 (citing Merino-Navarro Dep. at 62:5-21, 65:19-66:8, 66:21-67:6) (disputed by Plaintiff for a

different reason).[6] In addition, the Piña Declaration cites to placement letters from AB Staffing to KHC, confirming Dr. Merino-Navarro's contract and placement at KHC during the time period relevant to this lawsuit. *Id.* ¶ 10 (citing Docs. 70-7 (Exhibit C-8) and 70-8 (Exhibit C-9)).

Plaintiff has created a genuine dispute of fact as to whether there existed enforceable contractual obligations between the parties, but that is not the question the Court must consider here. And while Plaintiff purports to dispute the intention of the parties, he has pointed to no material evidence in the record to controvert the evidence that KHC, AB Staffing, and Dr. Merino-Navarro intended to establish an independent contractor relationship. Based on the undisputed material facts, this factor favors a finding that Dr. Merino-Navarro was an independent contractor.

2. *Lilly* Factor 2: Control Over the Process

The second factor is a closer call. The Government argues that it did not control the daily activities of the contract providers, including Dr. Merino-Navarro, at KHC. Doc. 111 at 11. In support of this, the United States cites to Dr. Merino-Navarro's deposition, in which she testified that she followed KHC's By Laws but was autonomous and made her own treatment decisions about diagnoses, referrals and consultations, and treatment. UMFs 32-33 (citing Merino-Navarro Dep. at 42:10-24, 46:5-47:16, 48:21-49:2). Dr. Merino-Navarro further testified that no employees at KHC evaluated or questioned her medical judgment, diagnoses, or specific medical treatments related to Plaintiff's care or that of any other patients. UMFs 34-35 (citing Merino-Navarro Dep.

[6] Other testimony from Dr. Merino-Navarro demonstrates that her relationship with KHC was consistent with the PWS. *See* Merino-Navarro Dep. at 49:21-51:2, 69:6-22 (confirming that KHC could evaluate the quality of the professional and administrative services rendered but retained no control over Dr. Merino-Navarro's medical judgment); 54:19-23, 59:15-20, 69:23-70:12 (confirming that AB Staffing was solely liable and agreed to indemnify the Government for any acts or omissions by Dr. Merino-Navarro, and that AB Staffing provided liability insurance for her); 60:14-61:3 (confirming Dr. Merino-Navarro underwent a background check); 70:15-71:1 (confirming the Government provided all equipment except her lab coat and stethoscope).

at 47:19-48:3, 49:21-51:2, 72:10-19). Plaintiff disputes all but one of the Government's asserted UMFs on this matter, citing to Dr. Merino-Navarro's deposition and the By Laws which show she was bound by the By Laws, subject to performance evaluations and disciplinary procedures for misconduct, and was asked to give a statement about Plaintiff's care. Doc. 138-1 at 4-5. Plaintiff argues that "[a]gency review of the health care services provided by physicians and nurses provides the supervision that the Supreme Court identified as the key day-to-day control factor in *Logue*." *Id.* at 13.

The Court is not convinced by Plaintiff's argument. *Lilly* itself makes clear that all physicians are expected to exercise their independent professional judgment. 876 F.2d at 858. The focus of this second factor, then, is not the level of control—via supervision, evaluation, or the like—that KHC exercised over Dr. Merino-Navarro's medical decision-making. Rather, the Court must determine whether KHC controlled the logistical *manner* and *methods* by which Dr. Merino-Navarro performed her medical duties at KHC. As such, while Plaintiff does raise genuine disputes of fact about the level of oversight KHC exercised over her medical care of patients, including Mr. Atcitty, these disputes are largely immaterial to this Motion.

The record shows that KHC did play some role in the day-to-day operations of Dr. Merino-Navarro's work there. As Plaintiff points out, *see* Doc 138-1 at 14-15, Dr. Merino-Navarro worked full-time at KHC, under the supervision of a clinical supervisor. Merino-Navarro Depo at 44:11-45:8, 59:7-14. KHC controlled her patient intake, and she saw no patients outside of KHC. *Id.* at 57:17-21, 58:8-19, 59:1-3. KHC provided nurses, equipment, and IT services. *Id.* at 27:18-19, 38:5-6, 63:9-15, 70:19-71:1. In addition, Dr. Merino-Navarro was subject to KHC's By Laws, which provided for clinical supervision, evaluation, and discipline. *Id.* at 39:22-24, 40:2-12, 43:17-45:8, 55:2-56:18.

At the same time, there is evidence that AB Staffing controlled many of the foundational methods by which Dr. Merino-Navarro accomplished her work at KHC. It was AB Staffing who identified and selected Dr. Merino-Navarro for work at KHC. Merino-Navarro Dep. at 15:9-16:3. And the letter from AB Staffing confirming Dr. Merino-Navarro's placement at KHC confirms that the contract's billing rate is "all-inclusive of travel and any ancillary expenses related to the performance of this contract," which shows that AB Staffing, not the Government, arranged Dr. Merino-Navarro's travel and other ancillary logistics to ensure she could perform the contract. *See* Doc. 70-7.

In *Tsosie v. United States*, the Tenth Circuit grappled with the employment status of a physician contracted to work in an IHS hospital. 452 F.3d 1161 (10th Cir. 2006). The Court applied the *Lilly* factors and held that the relevant physician was an independent contractor not covered by the FTCA. *Id.* at 1165. In analyzing the second factor, the Court relied entirely on the language of the contract between the doctor's employer and the hospital, which stated that "[t]he Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments." *Id.* at 1164. As the United States points out in its Reply brief, this language is identical to that contained in the AB Staffing PWS. Doc. 119 at 10; *see also* UMF 42; Doc. 70-6 at 14. Dr. Merino-Navarro further affirmed her understanding of this concept during her deposition. Merino-Navarro Dep. at 69:6-22. Plaintiff argues this should be disregarded because the PWS does not create binding contractual obligations, Doc. 138-1 at 5, 17-18, but the Court has already discussed and rejected this argument based on evidence in the Piña Declaration which links the PWS to AB Staffing's contract with KHC and confirms Dr. Merino-Navarro's placement at KHC, *see supra* discussion in Section

IV[A][1]. And Dr. Merino-Navarro's lack of familiarity with the PWS is irrelevant where her testimony affirms the facts in the PWS. Under *Tsosie*, then, the language of the AB Staffing PWS is sufficient to make clear that the second *Lilly* factor supports Dr. Merino-Navarro being an independent contractor.

Plaintiff emphasizes the role of the By Laws in setting credentialing requirements, overseeing patient care, and creating a performance accountability system. Doc. 138-1 at 11-13, 15 (citing Doc. 138-4, KHC Medical/Dental By Laws). Dr. Merino-Navarro also testified she was familiar with and followed KHC's By Laws. Merino-Navarro Dep. at 48:17-49:8. However, the Tenth Circuit has repeatedly held that a contract physician is not transformed into a federal employee by the mere fact of being subject to a hospital's rules and regulations. *See Lilly*, 876 F.2d at 860 (analogizing to a doctor in a private hospital with staff privileges and observing that "being subject to [a] hospital's rules as a condition of staff privileges does *not* remotely make a private physician an employee of that hospital."); *Duplan*, 188 F.3d at 1201 ("[T]he government's ability to require that contract doctors meet minimum qualifications and to conduct reviews of the contract doctors' performance amounts to nothing more than a standard quality assurance provision by which the government reserves the right to determine whether it is satisfied with the services it is purchasing under the contract.") (quotation omitted). Plaintiff's reliance on the By Laws therefore cannot carry the day.

Considering the undisputed facts in light of the Tenth Circuit case law discussed above, the Court finds that this second factor slightly favors the Government's position that Dr. Merino-Navarro was an independent contractor.

3. <u>*Lilly* Factor 3: Equipment</u>

Both parties acknowledge that KHC provided most of Dr. Merino-Navarro's equipment.

UMF 41 (citing Merino-Navarro Dep. at 64:25-65:9; 70:13-71:1, 8-13); Doc. 138-1 at 5 (withdrawing dispute as to UMF 41). Specifically, Dr. Merino-Navarro testified that KHC provided her with personal protective gear, exam room space, and computer access, but she provided her own lab coat and stethoscope. *Id.* This is supported by the AB Staffing PWS, under which the Government was required to provide information services and items for joint use, including clinical equipment, supplies, and examination space, as well as personal protective equipment and contractor identification badges. Doc. 70-6 at 7. The PWS required AB Staffing to provide Dr. Merino Navarro with all uniforms and personal medical instruments. *Id.* at 8.

The Government argues that this factor, alone, does not preclude a finding that Dr. Merino-Navarro was an independent contractor. Doc. 111 at 12-13. Indeed, the Tenth Circuit has often declined to weigh this factor heavily in the *Lilly* analysis, noting that "[w]hen a physician shows up to work in today's world—either as an independent contractor or a full-fledged employee—[s]he no longer is likely to carry all relevant medical instruments in a black satchel." *Tsosie*, 452 F.3d at 1164; *see also Duplan*, 188 F.3d at 1201-02; *Bethel v. United States*, 456 F. App'x 771, 779 (10th Cir. 2012) ("This [third] factor, even if relevant, is not determinative."). This factor therefore favors Plaintiff's position that Dr. Merino-Navarro is a federal employee, but it carries limited weight in the broader *Lilly* analysis.

4. *Lilly* Factor 4: Liability Insurance

It is undisputed that AB Staffing provided Dr. Merino-Navarro with liability insurance. Mr. Piña attested to this in his Declaration, Doc. 62-5 ¶ 13, and the Government produced a Certificate of Liability Insurance under which AB Staffing was insured on the date that Dr. Merino-Navarro treated Plaintiff at KHC. Doc. 77-4 (Exhibit C-13). Plaintiff disputed this fact for unspecified reasons in his Response to the Original Motion, but he did not cite to any evidence in

the record to controvert the Government's assertion. Doc. 72 at 3. Since then, Dr. Merino-Navarro was deposed, and she testified that AB Staffing paid for and provided her with liability insurance coverage. UMF 44 (citing Merino-Navarro Dep. at 59:15-20; 70:4-12; 71:14-16). Plaintiff did not dispute this fact in his Response to the Supplemental Motion, Doc. 138-1 at 6, and at the hearing on the Supplemental Motion, Plaintiff's counsel clarified that this factor is not disputed as to Dr. Merino-Navarro. This factor indicates an independent contractor relationship.

5. *Lilly* Factor 5: Social Security Tax

Dr. Merino-Navarro testified in her deposition that she paid her own social security taxes and other employment-related taxes. UMF 37 (citing Merino-Navarro Dep. at 54:12-23, 60:4-7, 71:17-20). Plaintiff does not seem to dispute this fact. Doc. 138-1 at 5 (disputing UMF 37 for another reason). This factor therefore favors a finding that Dr. Merino-Navarro was not an employee of the Government. *See Norton v. Murphy*, 661 F.2d 882, 884-85 (10th Cir. 1981) (finding tortfeasor was an independent contractor rather than a federal employee based, in part, on the fact that he paid self-employment social security tax).

6. *Lilly* Factor 6: Federal Regulations

In *Norton v. Murphy*, a key predecessor case to *Lilly*, the Tenth Circuit held that a person contracted to deliver mail for the United States was an independent contractor, rather than a federal employee. *Id.* at 884. One of the factors relevant to the Court's decision was the fact that Postal Service regulations prohibit the award of any contract of the type at issue to employees of the Postal Service. *Id.* at 885. This later became the sixth *Lilly* factor. *See Lilly*, 876 F.2d at 859. In this case, the Government argues this factor is neutral because federal regulations allow KHC to use contract medical providers. Doc. 62 at 20-21; Doc. 111 at 14. Defendant's Original Motion emphasizes that while the medical providers were subject to federal rules and regulations, this did

not transform them into federal employees. *Id.* Plaintiff does not address this factor in his Response to either the Original or the Supplemental Motion, but he seemingly acknowledges it "may be neutral" in response to the Defendant's Supplemental Reply. Doc. 139 at 13.

The case law is not entirely clear on the relevance of this factor. In *Norton*, the Court seemingly reasoned that, because federal regulations prohibit federal employees from performing the contract at issue, the individual performing the contract was not a federal employee. 661 F.2d at 885. More recently, however, the Tenth Circuit has found—without explanation—that this factor weighs in favor of independent contractor status when there are *no* regulations prohibiting federal employees from performing such contracts. *See Bethel*, 456 F. App'x at 779; *Tsosie*, 452 F.3d at 1164 (framing the factor as whether federal regulations prohibit the subcontracting of medical services).

Because the Tenth Circuit developed the *Lilly* factors based on the analysis in *Norton*, the Court is inclined to adopt the reasoning in that case. *See Lilly*, 876 F.2d at 859. The Government has identified no federal regulations prohibiting a federal employee from performing Dr. Merino-Navarro's contract. Based on the reasoning in *Norton*, this does not support Dr. Merino-Navarro's status as an independent contractor. At the same time, Plaintiff has made no arguments that the federal regulations—or lack thereof—provides evidence of Dr. Merino-Navarro's status as a federal employee. And the Court does not read *Norton* as supporting that conclusion either. The Court therefore finds this factor to be neutral.

7. *Lilly* Factor 7: Ability to Subcontract to Others

It is undisputed that Dr. Merino-Navarro did not have the authority to subcontract her duties

to others. UMF 45 (citing Merino-Navarro Dep. at 60:8-13, 72:1-7).[7] At the hearing in this matter, counsel for the Government seemed to argue this favored their position that Dr. Merino-Navarro was an independent contractor. However, *Lilly* and its progeny make clear that this fact favors Plaintiff's position that Dr. Merino-Navarro was a federal employee. *See Tsosie*, 452 F.3d at 1164; *Bethel*, 456 F. App'x at 779.

8. Conclusion

In sum, four of the *Lilly* factors suggest Dr. Merino-Navarro was acting as an independent contractor when she treated Plaintiff, two factors suggest she was acting as a federal employee, and one is neutral. Importantly, the Government's position is supported by the first two factors, which the Tenth Circuit has found dispositive when applying the *Lilly* framework. *See, e.g., Lilly*, 876 F.2d at 859-60; *Duplan*, 188 F.3d at 1200-02; *Ohlsen*, 998 F.3d at 1159-60. Based on the undisputed material facts in the record, the Court finds that Dr. Merino-Navarro was an independent contractor with KHC, not an employee, during Plaintiff's care. The Court therefore lacks subject matter jurisdiction to hear the claims against Dr. Merino-Navarro under the FTCA.

**B. Dr. Ossen, of VISTA**

1. *Lilly* Factor 1: Intent of the Parties

The undisputed material facts also demonstrate that KHC, VISTA, and Dr. Ossen intended to establish an independent contractor relationship. The Piña Declaration states that KHC had a non-personal services contract with VISTA, under which VISTA agreed to provide emergency medicine physician services at KHC. Doc. 62-5 ¶ 3. Similar to Dr. Merino-Navarro, above, the

[7] Plaintiff purports to dispute this fact, pointing out that Defendant never produced a valid, binding contract between AB Staffing and KHC. Doc. 138-1 at 6. But Plaintiff cites to no evidence that genuinely disputes Dr. Merino-Navarro's deposition testimony. The Court construes Plaintiff's dispute as focused on Defendant's label of Dr. Merino-Navarro as a "contract physician," not to the fact that she could not subcontract with others.

Government points to the Task Order and Performance Based Statement of Work ("PBSOW") applicable to VISTA. Doc. 111 at 10. Unlike the AB Staffing Task Order, the VISTA Task Order is not labeled as one for non-personal services. Even more problematic, the operative dates of the Task Order do not include the date on which Dr. Ossen allegedly treated Plaintiff. *See* Doc. 139 at 3-4 (citing Doc. 5 ¶ 11); *see also* Doc. 62-6 (Exhibit C-1) at 2. The Court will therefore not consider this Task Order as it relates to Dr. Ossen. However, the PBSOW applicable to VISTA "describes the requirements for a non-personal service contract[.]" Doc. 62-7 (Exhibit C-2) at 2. It also contains identical language to the AB Staffing PWS, specifying that "the professional services rendered by the Contractor [under the contract] are rendered in its capacity as an independent contractor." *Id.* at 16. Further, under the PBSOW, the Contractor is solely liable for any liability-producing acts or omissions, *id.*, and the Government will provide each contractor with "facility specific *contractor* identification badges," *id.* at 7. The PBSOW suggests the parties' intention of establishing an independent contractor relationship.

Dr. Ossen's deposition testimony bolsters the intent factor. Dr. Ossen testified that, at the time he treated Plaintiff, he was working as a locum tenens physician[8] at KHC; that he was employed by VISTA rather than by KHC; and that it was the intent of both VISTA and KHC that he be a contract physician rather than a federal employee. UMFs 46 (citing Doc. 111-2 (Exhibit G, Deposition of Dr. Ossen) at 11:9-20, 12:7-18, 14:12-20, 43:8-24), 47 (citing Ossen Dep. at 50:2-15). Plaintiff purports to dispute these facts because "Defendant did not produce a valid, binding contract between [VISTA] and KHC." Doc. 138-1 at 6. Plaintiff also points out that Dr. Ossen testified he was not familiar with the PBSOW. Doc. 139 at 3 (citing Ossen Dep. at 34:18-

---

[8] Dr. Ossen also testified that a "locum tenens" position is one awarded by contract on an interim or short-term basis. Ossen Dep. at 11:9-20.

23). For the same reasons discussed above, the Court rejects Plaintiff's dispute and argument that this factor favors employee status because of missing links between the PBSOW, the underlying VA contract, and Dr. Ossen specifically. *See* Doc. 138-1 at 2, 6. The Piña Declaration provides evidence that the attached PBSOW does correspond to a contract with VISTA and that Dr. Ossen worked at KHC pursuant to that contract. Doc. 62-5 ¶¶ 3, 5. The latter claim is supported by a placement letter from VISTA to KHC, confirming Dr. Ossen's contract and placement at KHC during the time he allegedly treated Plaintiff. *Id.* ¶ 5 (citing Doc. 70-3 (Exhibit C-4)). And at his deposition, Dr. Ossen confirmed his employment with VISTA, VISTA's contract with KHC, and his resulting placement at KHC.[9] *See* UMFs 46-47.

The undisputed facts and evidence in the record therefore point to the parties' intention that Dr. Ossen work as an independent contractor.

2. *Lilly* Factor 2: Control Over the Process

This factor slightly favors the Government's position that Dr. Ossen was working as an independent contractor. The Government argues that it did not control the daily activities of Dr. Ossen. Doc. 111 at 10. The Supplemental Motion cites to his deposition testimony and the VISTA PBSOW to emphasize that no KHC employee or document directed how Dr. Ossen cared for patients or practiced medicine. UMFs 49-55. Plaintiff disputes each of the Government's asserted UMFs on this matter, citing to Dr. Ossen's deposition and the By Laws which show he was bound by the By Laws and subject to performance evaluations and disciplinary procedures for misconduct. Doc. 138-1 at 6-8.

---

[9] Like Dr. Merino-Navarro, Dr. Ossen's deposition testimony also confirms that he performed his work at KHC in a manner consistent with the VISTA PBSOW. *See* Ossen Dep. at 51:6-52:10 (confirming the Government could evaluate the quality of administrative and professional services rendered but retained no control over the professional services rendered); 52:11-53:8 (confirming provision of equipment by KHC).

As was discussed above, the *Lilly* factors account for the expectation that all physicians will exercise their independent professional judgment in performing their duties, regardless of their employer. 876 F.2d at 858. Like the AB Staffing PWS, the language of the VISTA PBSOW also makes clear that the Government retained no control over Dr. Ossen's medical judgment. Doc. 62-7 at 16. At the same time, the Tenth Circuit has recognized that "the right of the government to inspect work for compliance with a contract does not automatically make the worker an employee." *Curry v. United States*, 97 F.3d 412, 415 (10th Cir. 1996); *see also Duplan*, 188 F.3d at 1201. The Court focuses, then, not on Dr. Ossen's use of independent judgment or KHC's quality assurance measures, but on the degree of control KHC exercised over the logistics of Dr. Ossen's work at KHC.

In his Response to the Supplemental Motion, Plaintiff does not directly address the facts applicable to Dr. Ossen when arguing that the physicians were under the day-to-day control of KHC. *See* Doc. 138-1 at 13-15. In a separate section, however, Plaintiff emphasizes the role of the By Laws and Dr. Ossen's supervisor, a KHC employee, in reviewing his performance and conditioning his hospital privileges. *Id.* at 11-13. Dr. Ossen himself testified that his supervisor primarily performed scheduling and administrative duties for the Emergency Department, in addition to conducting quality assurance measures when problems were raised. Ossen Dep. at 23:16-25:6. For the same reasons as those explained above, for Dr. Merino-Navarro, the Court is not persuaded that the By Laws and quality assurance measures alone transform Dr. Ossen into a federal employee. *See Lilly*, 876 F.2d at 860; *Duplan*, 188 F.3d at 1201; *Tsosie*, 452 F.3d at 1164; Ossen Dep. at 51:6-52:10. Administrative supervision by a federal employee, however, certainly supports some level of Government control over Dr. Ossen's day-to-day work.

On the other hand, there is also evidence that VISTA controlled many of the methods by which Dr. Ossen accomplished his work at KHC. It was VISTA who recruited Dr. Ossen to work with them and placed him at KHC; he did not go through any hiring process with KHC directly. Ossen Dep. at 43:8-24, 44:15-18. And the letter from VISTA confirming Dr. Ossen's placement at KHC confirms that VISTA would arrange travel to and from KHC and provide local housing for the duration of Dr. Ossen's placement there. *See* Doc. 70-3.

Consistent with the reasoning for Dr. Merino-Navarro, described above, the Court finds that this second factor slightly supports Dr. Ossen's role as an independent contractor.

3. *Lilly* Factor 3: Provision of Equipment

Dr. Ossen's deposition indicates that he provided his own uniforms and stethoscope but was provided with personal protective equipment (PPE), exam space, and other equipment by KHC. UMF 56 (citing Ossen Dep. at 48:25-49:7, 52:11-53:19). Plaintiff purports to dispute this fact but cites to no evidence that some individual or entity other than KHC provided Dr. Ossen with the bulk of his equipment. *See* Doc. 138-1 at 8 (seemingly disputing UMF 56 because "Defendant did not produce an employment agreement between [VISTA] and Ossen," not based on any facts related to the provision of equipment). The PBSOW applicable to VISTA confirms that the Government provided "all necessary equipment, supplies, and clinic space to perform the services under this contract," including PPE and identification badges. Doc. 62-7 at 7.

For the same reasons as those discussed for Dr. Merino-Navarro, above, this factor suggests an employment relationship between Dr. Ossen and the Government, but the Court will not weigh it heavily in the overall *Lilly* analysis.

4. *Lilly* Factor 4: Provision of Liability Insurance

It is undisputed that VISTA provided Dr. Ossen with liability insurance. This fact is

supported by the Piña Declaration, Doc. 62-5 ¶ 12; a Certificate of Liability Insurance confirming coverage for Dr. Ossen during the dates relevant to this lawsuit, Doc. 77-2 (Exhibit C-11); and Dr. Ossen's deposition testimony, Ossen Dep. at 45:12-15, 53:16-54:4. *See also* UMFs 16, 56. While Plaintiff seems to dispute UMF 56 for a separate reason, Plaintiff's counsel confirmed at the hearing in this matter that he does not dispute that VISTA provided Dr. Ossen with liability insurance. This factor indicates an independent contractor relationship.

5. *Lilly* Factor 5: Payment of Social Security Tax

Dr. Ossen testified in his deposition that he paid his own social security taxes and other employment-related taxes through his professional corporation. UMF 57 (citing Ossen Dep. at 45:16-20, 54:5-13). Plaintiff purports to dispute this fact because "Defendant did not produce any tax forms showing the alleged taxes paid by Ossen." Doc. 138-1 at 9. But the Government is not required to produce a specific type of evidence to establish this fact. Dr. Ossen testified that he paid his own social security taxes, and Plaintiff has pointed to no evidence nor any arguments to call into question the credibility of this statement. The Court therefore finds that Plaintiff has not genuinely disputed this fact. This factor favors the United States' position that Dr. Ossen was not a federal employee. *See Norton*, 661 F.2d at 884-85.

6. *Lilly* Factor 6: Federal Regulations

Neither party produced any evidence of this factor specific to Dr. Ossen. The reasoning outlined above for Dr. Merino-Navarro therefore also applies to Dr. Ossen. This factor is neutral.

7. *Lilly* Factor 7: Ability to Subcontract

It is undisputed that Dr. Ossen did not have authority to subcontract his duties to others. UMF 58 (citing Ossen Dep. at 45:21-25, 55:2-8). While Plaintiff purports to dispute this fact, the dispute focuses on the alleged lack of a valid, binding contract between VISTA and KHC. *See*

Doc. 138-1 at 9. In fact, Plaintiff's Response cites to the same excerpt of Dr. Ossen's deposition confirming he did not have authority to subcontract. *Id.* For the same reasons as Dr. Merino-Navarro, described above, this factor favors Plaintiff's position that, at the time he treated Plaintiff, Dr. Ossen was a federal employee.

8. Conclusion

In sum, the undisputed facts show that four of the *Lilly* factors—including the first two—support a finding that Dr. Ossen was working as an independent contractor, two suggest he was a federal employee, and one is neutral. Considering the factors all together, the Court finds that Dr. Ossen was working as an independent contractor, not a federal employee, when he treated Plaintiff at KHC. Accordingly, the Court lacks subject matter jurisdiction to hear the FTCA claims against Dr. Ossen.

**C. Remaining VISTA Doctors, Dr. Borrego-Acosta and Dr. Wolff**

Neither Dr. Borrego-Acosta nor Dr. Wolff were deposed in this matter, and the evidence applicable to them is nearly identical. As such, the Court will analyze them together. In addition, much of the discussion about these providers was contained in the Original Motion, rather than the Supplemental Motion. The Court therefore refers to the briefing associated with the Original Motion, which was incorporated into the Supplemental Motion. Doc. 111 at 10 (incorporating the UMFs and arguments from Original Motion); Doc. 138-1 at 1 (incorporating responses to UMFs from Original Motion).

1. *Lilly* Factor 1: Intent of the Parties

For largely the same reasons as Dr. Ossen, described above, the undisputed material facts show that KHC and VISTA intended to establish an independent contractor relationship. *See supra* discussion in Section IV[B][1]. Neither Dr. Borrego-Acosta nor Dr. Wolff were deposed in this

matter, but the Piña Declaration explains that they were both provided to work at KHC pursuant to a non-personal services contract between KHC and VISTA. Doc. 62-5 ¶¶ 3-4, 6-7. The Declaration is supported by the VISTA Task Order and PBSOW, the latter of which, as explained above, demonstrates an intention to establish an independent contractor relationship.[10] *See* Docs. 62-6, 62-7.

Dr. Borrego-Acosta's placement at KHC by VISTA is evidenced by a placement letter from VISTA to KHC, confirming his contract and placement at KHC during the time period relevant to this lawsuit. *Id.* ¶ 4 (citing Doc. 70-2 (Exhibit C-3)). Defendant did not produce a placement letter for Dr. Wolff. Instead, the Government produced a Declaration from Lynn Holton, Associate Vice President of Operations at VISTA. *See* Doc. 70-4 (Exhibit C-5) (hereinafter the "Holton Declaration"). The Holton Declaration explains that, after a diligent search, a confirmation placement letter could not be found for Dr. Wolff. *Id.* ¶ 6. However, the Declaration confirms that Dr. Wolff "was one of the doctors who [VISTA] employed and provided to work as an independent contractor 'locum tenens' medical provider at KHC pursuant to a nonpersonal services contract between KHC and [VISTA]." *Id.* ¶ 4. Payment and work records attached to the Holton Declaration also confirm that Dr. Wolff worked at KHC on the date he allegedly provided negligent care to Plaintiff. *Id.* ¶ 6 (citing *id.* at 6-7).

These documents establish the parties' intent for these doctors to work as independent contractors. As the Court already explained for Drs. Merino-Navarro and Ossen, the deficiencies identified by Plaintiff are rectified by the Piña Declaration and, for Dr. Wolff, by the Holton Declaration. Without any evidence to dispute the declarations themselves, the Court finds it

---

[10] The VISTA Task Order excludes the alleged date that Dr. Borrego-Acosta treated Plaintiff. The Court therefore declines to consider it but nevertheless finds the Government has met its burden of production by citing to the Piña Declaration and the PBSOW.

undisputed that the parties intended for Dr. Borrego-Acosta and Dr. Wolff to work as independent contractors.

2. *Lilly* Factor 2: Control Over the Process

The Government asserts that KHC did not supervise or control the detailed daily operations of any of the contract doctors, including Dr. Borrego-Acosta and Dr. Wolff. UMFs 24, 27 (citing Piña Declaration ¶¶ 19, 22). Plaintiff disputes these facts for an unspecified reason and without citing to any record evidence. *See* Doc. 72 at 3. This is not sufficient to establish a dispute under Rule 56. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or [by] showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Consistent with Rule 56(e), the Court therefore considers the United States' facts on this matter to be undisputed but will analyze the evidence in the record to determine whether or not it supports the Government's arguments on this factor.

As was the case for Dr. Ossen, there is evidence that VISTA controlled many of the methods by which Drs. Borrego-Acosta and Wolff accomplished their work at KHC. Specifically, the letter from VISTA confirming Dr. Borrego-Acosta's placement at KHC confirms that VISTA would arrange travel to and from KHC and provide local housing for the duration of Dr. Borrego-Acosta's placement there. *See* Doc. 70-2. And while no such letter was provided for Dr. Wolff, the Holton Declaration confirms the same for him. Doc. 70-4 ¶ 5.

Like Dr. Ossen, the Piña Declaration shows that these doctors were subject to the VISTA PBSOW, which stated that "[t]he Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services

rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments." Doc. 62-7 at 16. As discussed above, the Tenth Circuit has found this exact language sufficient to find the second *Lilly* factor is met in favor of an independent contractor relationship. *Tsosie*, 452 F.3d at 1164.

Based on the undisputed facts and applicable case law, the Court finds that this second factor supports the Government's position that Dr. Borrego-Acosta and Dr. Wolff were independent contractors.

3. *Lilly* Factor 3: Provision of Equipment

The parties do not dispute that KHC provided the bulk of the equipment to the providers, including Dr. Borrego-Acosta and Dr. Wolff. *See* Doc. 62 at 18 (citing Doc. 62-7 at 7-8); Doc. 72 at 19. For the same reasons as those discussed for Dr. Merino-Navarro and Dr. Ossen, this factor suggests that Drs. Borrego-Acosta and Wolff were federal employees, though the Court affords this factor limited weight in the overall *Lilly* analysis.

4. *Lilly* Factor 4: Provision of Liability Insurance

In its Original Motion, the Government asserts that VISTA provided Dr. Borrego-Acosta and Dr. Wolff with liability insurance. UMF 16. This assertion is supported by the Piña Declaration and attached Certificates of Liability Insurance covering Dr. Borrego-Acosta and Dr. Wolff specifically. *See* Doc. 62-5 ¶ 12 (citing Docs. 77-1 (Exhibit C-10) and 77-3 (Exhibit C-12)). This evidence is consistent with the VISTA PBSOW, which requires the Contractor to provide liability insurance during the term of the contract. Doc. 62-7 at 16. Plaintiff disputes this fact for an unspecified reason, Doc. 72 at 3, but provides no evidence to controvert the information and evidence provided as part of the Piña Declaration. At the hearing in this matter, Plaintiff clarified that he does not dispute this factor as it relates to all four doctors. The Court therefore finds it to

be undisputed that VISTA provided liability insurance for Dr. Borrego-Acost and Dr. Wolff. This factor indicates an independent contractor relationship.

5. *Lilly* Factor 5: Payment of Social Security Tax

In its Original Motion, the Government asserts that VISTA was responsible for paying applicable taxes for the contract providers. UMF 27 (citing Piña Declaration ¶ 22). Plaintiff disputes this fact for unspecified reasons and without citing to the record. Doc. 72 at 3. Not much evidence was produced in support of this factor for the providers who were not deposed. However, Plaintiff has the burden of establishing subject matter jurisdiction, and he has produced no evidence to dispute the information provided in the Piña Declaration with regard to VISTA's payment of taxes. Accordingly, the Court finds that UMF 27 is undisputed and that this factor weighs against finding Drs. Borrego-Acosta or Wolff to be federal employees.

6. *Lilly* Factor 6: Federal Regulations

Neither party produced any evidence of this factor specific to Dr. Borrego-Acosta or Dr. Wolff. The reasoning outlined above for the two providers previously discussed therefore also applies to these doctors. This factor is neutral.

7. *Lilly* Factor 7: Ability to Subcontract

As the Government points out, the VISTA PBSOW is silent on whether or not contractors are allowed to subcontract their duties to others. Doc. 62 at 21-22. Without the benefit of deposition testimony from Dr. Borrego-Acosta and Dr. Wolff, the Court has no evidence suggesting which way this factor points. The Court therefore finds this factor to be neutral as to Dr. Borrego-Acosta and Dr. Wolff.

8. Conclusion

Based on the undisputed facts supported by evidence in the record, four factors—including

the first two—favor a finding that the remaining VISTA providers were working as independent contractors when they treated Plaintiff; one factor suggests an employment relationship; and two are neutral. Overall, the Court finds that Dr. Borrego-Acosta and Dr. Wolff were independent contractors. The Court therefore lacks subject matter jurisdiction to hear the FTCA claims against these two doctors.

**D. The Robison Nurses, Brian Miller and Casey Patton**

Neither Nurse Miller nor Nurse Patton were deposed in this matter, and the evidence applicable to them is identical. As such, the Court will analyze them together. In addition, like Dr. Borrego-Acosta and Dr. Wolff, above, much of the discussion about these providers was contained in the Original Motion. The Court therefore refers to the briefing associated with the Original Motion.

1. *Lilly* Factor 1: Intent of the Parties

The undisputed material facts show that KHC and Robison intended to establish an independent contractor relationship. Neither Nurse Miller nor Nurse Patton were deposed in this matter, but the Piña Declaration explains that they were both provided to work at KHC pursuant to a non-personal services contract between KHC and Robison. Doc. 62-5 ¶¶ 14-15. The Declaration is supported by the Robison Task Order and PWS. *See* Docs. 77-5 (Exhibit C-14), 77-6 (Exhibit C-15). Like the VISTA Task Order, the Robison Task Order is not labeled as one for non-personal services. However, the PWS applicable to Robison is entitled "Performance Work Statement (PWS) *For Non-Personal Services*." Doc. 77-6 at 1 (emphasis added). It contains several of the same provisions as the AB Staffing and VISTA work statements, including the one specifying that "[i]t is explicitly agreed and understood that this is a non-personal services contract . . . under which the professional services rendered by the Contractor are rendered in its capacity

as an independent contractor." *Id.* at 14. This supports the Government's position that the parties intended an independent contractor relationship.

Plaintiff purports to dispute every UMF cited by the Government in support of its argument that the Robison nurses were intended to be independent contractors. *See* Doc. 72 at 3 (disputing UMFs 18-22, 27). For each dispute, however, Plaintiff provides no explanation and cites to no evidence in the record. As with the AB Staffing and VISTA providers, the Court finds that the Piña Declaration corrects any missing links identified by Plaintiff between the Robison Task Order, PWS, and the individual nurses. Without evidence that controverts the Piña Declaration or suggests the parties intended these nurses to be employees, the Court finds it undisputed that the parties intended for Nurses Miller and Patton to work as independent contractors.

2. *Lilly* Factor 2: Control Over the Process

The Government asserts that KHC did not supervise or control the detailed daily operations of any of the contract providers, including the Robison nurses. UMFs 24, 27 (citing Piña Declaration ¶¶ 19, 22). As discussed above for the VISTA providers, Plaintiff has failed to demonstrate a genuine dispute of fact as to this factor under Rule 56. Nevertheless, the Court will analyze the Plaintiff's arguments and the evidence in the record as to the Robison nurses specifically.

Similar to the other providers in this case, the Robison Task Order states that the contract rate is "all inclusive" and includes per diem, travel costs, and the like. Doc. 77-5 at 2. This supports a finding that Robison was in control of the logistics associated with performing the contract.

In response to Defendant's Supplemental Motion, Plaintiff argues that the nurses were under the daily control of the Government, pointing to KHC's By Laws and emphasizing that KHC controlled the credentialing process for all doctors and nurses and supervised their care. Doc. 138-

1 at 12-13, 19. For the same reasons as those discussed above, the By Laws' general quality assurance and supervision provisions cannot, without more, transform these nurses into federal employees.

In response to Defendant's Supplemental Reply, Plaintiff further argued that "[p]hysician autonomy reasoning cannot automatically be extended to nurses who may have worked under closer clinical direction." Doc. 139 at 13. This is not without support in the case law. *See Bird v. United States*, 949 F.2d 1079, 1085-86 (10th Cir. 1991) (finding nurse was a federal employee when, as mandated by state law, he was under the control and supervision of a Government physician). However, Plaintiff has pointed to no facts in the record establishing who supervised Nurse Miller or Nurse Patton and what that supervision looked like. In fact, the Robison PWS suggests these nurses retained a similar level of independence as contract physicians by stating that the Government "retains no control over professional aspects of the services rendered"—the same language the *Tsosie* Court found to be dispositive on this second factor. 452 F.3d at 1164. This falls short of Plaintiff's burden, at summary judgment, to demonstrate a genuine dispute of material fact. It also falls short of his threshold burden of establishing that subject matter jurisdiction exists in the case.

Following *Tsosie*, and based on the undisputed facts, the Court finds this second factor supports the Government's position that the Robison nurses were independent contractors.

3. *Lilly* Factor 3: Provision of Equipment

The parties do not dispute that KHC provided the bulk of the equipment to all the providers, including the Robison nurses. *See* Doc. 62 at 18 (citing Doc. 77-6 at 7-8); Doc. 72 at 19. For the same reasons as those discussed for each doctor, above, this factor suggests that the

Robison nurses were federal employees, though the Court does not weigh this factor heavily in its overall *Lilly* analysis.

4. *Lilly* Factor 4: Provision of Liability Insurance

In its Original Motion, the Government asserts that Robison provided Nurse Miller and Nurse Patton with liability insurance. UMF 22 (citing Piña Declaration ¶ 17). Plaintiff disputed this fact for an unspecified reason and without citing to any supporting materials. *See* Doc. 72 at 3. At the hearing in this matter, Plaintiff's counsel maintained the dispute because, unlike it did for the other providers, the Government did not provide Certificates of Liability Insurance confirming insurance coverage.

This is not enough to create a genuine dispute of fact. Through the Piña Declaration, the Government has produced evidence that Robison purchased liability insurance to cover Nurses Miller and Patton. Moreover, this evidence is consistent with the provisions in the Robison PWS requiring the Contractor to maintain liability insurance during the term of the contract. Doc. 77-6 at 14. The Court therefore finds that the United States has supported its factual position with particular materials in the record, as required by Rule 56, and Plaintiff has not raised a proper dispute. As such, this factor undisputedly indicates an independent contractor relationship.

5. *Lilly* Factor 5: Payment of Social Security Tax

In its Original Motion, the Government asserts that Robison was responsible for paying applicable taxes for the contract providers. UMF 27 (citing Piña Declaration ¶ 22). The Court already analyzed the evidence and arguments applicable to the providers who were not deposed in subsection C[5], above, and found UMF 27 undisputed. For the same reasons as above, this factor weighs against finding the Robison nurses to be federal employees.

6. *Lilly* Factor 6: Federal Regulations

Neither party produced any evidence of this factor specific to the Robison nurses. The reasoning outlined for the providers previously discussed therefore also applies to Nurse Miller and Nurse Patton. This factor is neutral.

7. *Lilly* Factor 7: Ability to Subcontract

As the Government points out, the Robison PWS is silent on whether contractors are allowed to subcontract their duties to others. Without the benefit of deposition testimony from Nurse Miller or Nurse Patton, the Court has no evidence suggesting which way this factor points. The Court therefore finds this factor to be neutral as to the Robison nurses.

8. Conclusion

Based on the undisputed facts in the record, four factors—including the first two—favor a finding that the Robison nurses were working as independent contractors when they treated Plaintiff. One factor suggests an employment relationship, and two are neutral. The Court therefore finds that Nurse Miller and Nurse Patton were independent contractors. As such, the Court lacks subject matter jurisdiction over the FTCA claims against them.

**E. Plaintiff's alternative argument that these providers were "acting on behalf of a federal agency" fails.**

In addition to arguments about control, Plaintiff argues that the medical providers at issue were federal employees because they were "persons acting on behalf of a federal agency." The FTCA defines a federal employee to include, among other things (1) officers or employees of any federal agency and (2) persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States. 28 U.S.C. § 2671. Plaintiff seems to argue, as an alternative to the *Lilly* factors, that the Court can find the doctors and nurses involved in his care were federal employees under the latter category because they were

credentialed by the Government to provide medical services on behalf of the IHS. Doc. 138-1 at 11-13, 19.

Plaintiff's alternative argument is misplaced. In *Logue*, the Supreme Court rejected this as an alternative argument and emphasized that whether a person is "acting on behalf of a federal agency" also depends on application of the "control test." 412 U.S. at 530-32 ("[W]e are not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as 'acting on behalf of' a federal agency simply because they are performing tasks that would otherwise be performed by salaried employees of the Government."). The *Logue* Court reasoned that such a rule would render the exclusion of contractors from the FTCA virtually meaningless. *Id.* at 532. In the Tenth Circuit, the "control test" asks whether the Government supervises the day-to-day operations of the individual. *Lurch*, 719 F.2d at 337. And in the context of medical providers, the *Lilly* factors inform that determination. The Court's analysis of the *Lilly* factors, then, also rules out the argument that the providers were "acting on behalf of" the IHS.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that it does not have subject matter jurisdiction over Plaintiff's FTCA claim against the Government as it relates to Dr. Merino-Navarro, Dr. Ossen, Dr. Borrego-Acosta, Dr. Wolff, Nurse Brian Miller, and Nurse Casey Patton. The United States' Supplemental Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is therefore **GRANTED IN PART**. The Court dismisses the claims against the six medical providers that are the subject of Defendant's Supplemental Motion but denies Defendant's request for complete dismissal of the Amended Complaint. The Government itself acknowledges

that three of the nurse defendants are federal employees, so the claims pertaining to those three nurses survive.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE